Pearson, J.
 

 Was the instrument delivered, so as to become the deed of Stephen Sparks ? is the main question in the cause.
 

 Harrison White,
 
 swears that he was called upon by Sparks-, at his (Sparks’) house, to draw a conveyance from him to Mary Ann White, for two negroes, Candice and Minerva, The witness told him he did not understand writing either a deed of gift, or a bill of sale. Sparks said he had given a bill of sale to Drucilla White; witness could get that and draw one by it. He did so, changing the names, and the sum of money, which was small. After it was written, he read it over to Sparks, who signed it by making his mark, and requested him to witness it, which he did, and left it lying on the table as he went off. No one was in the room but witness, Sparks, and Mary Ann White. Witness heard Sparks say afterwards that he had given, or sold the two negroes to Mary Ann White.
 

 Several other witnesses swear, that they heard Sparks say that he had executed a deed of gift to Mary Ann White for two negreos, and particularly, that when he executed a deed of trust of all his other negroes, he refused to insert these two* saying he had given a bill of sale for them to Mary Ann White, and they were not his. The bill of sale from Sparks to Drucilla White, referred to by the first witness, is produced as an exhibit. It is in the usual form, and is signed and sealed by Sparks, and attested by two subscribing witnesses.
 

 If Harrison White, the subscribing witness, were dead,
 
 *15
 
 proof of Ms hand-writing, would be
 
 prima facie
 
 evidence that it was duly executed; i. e., was signed, sealed and delivered, His testimony, we think, is at least, equivalent to the inference that would be drawn from proof of his handwriting, if he were dead. He proves a present purpose to execute the deed ; that jit was signed, and he attested it as a subscribing witness, at the request of the maker, and left it lying on the table, in the presence of the donor and donee. This being
 
 prima facie
 
 evidence, that it was duly executed, the question is, what is there to rebut the presumption ? "We can see nothing. On the contrary, the declarations made afterwards by the donor, confirm the presumption, if they do not, of themselves, furnish evidence of the fact of the delivery.
 
 Baldwin
 
 v. Maultsby, 5 Ire. Rep. 505,
 
 Kirk
 
 v. Turner, 1 Dev. Eq. 14, and
 
 Newlin
 
 v. Osborne, 4 Jones’ Rep. 157, are distinguishable from this case. In the first, the donees were not present, and the subscribing witness left the donor alone in the room, the instrument lying on the table. After his death, it was found in his trunk. In the second, the donees were not present, and the subscribing witness handed the instrument to the donor, and went away. In the third, the bargainee was not present, and the subscribing witness handed the instruments to the bagainor, who carried them off with him. In these eases, the fact that neither the donees, nor any person, who could act for them, were present, and that the instruments were left with the donors, when alone, so that a delivery
 
 could not be
 
 made, necessarily repelled the presumption of a delivery.
 

 The production of the deed to Drucilla "White, and the testimony of Harrison White, that he drew the conveyance from Sparks to Mary Ann White, for the two slaves, using that as a form, changing only the names, and the small sum that was inserted as a consideration, fully meets the difficulty as to proving the contents of the deed, which is lost.
 

 The position, that the defendant has acquired title by an adverse possession for three years, cannot be maintained. Mary Ann White lived with Stephen Sparks, and the negroes re
 
 *16
 
 mained on the premises until his death. She was then an infant, and there is no allegation, or proof, that Sparks was in the adverse possession. After his death, Mary Ann 'White, still being an infant, continued to reside with the widow until her death, about February, 1849, and the negroes remained on the premises. Shemuel Kearney then took the negroes into his possession, and held them until December, 1851, when the defendant took them into his possession. The bill was filed April, 1854, a few months over two years. The defendant alleges that Shemuel Kearney held possession by his permission, and as his bailee. This allegation is positively denied by Kearney. He swears that he took possession of the other slaves, claiming them under the deed of trust, and of these two slaves under the advice of his attorney, supposing that it might become necessary to resort to them, if the trust fund should prove insufficient, in order to pay the debts of Sparks, for which they were liable, notwithstanding the deed of gift, which was mentioned to him by Sparks at the time the deed of trust was executed for the other negroes. So, if the Kearney was the bailee of any one, it was of Mary Ann White, who was entitled to the negroes as against the defendant, the administrator of the donor.
 

 Mary Ann White married in 1850. Whether she was then an infant or not, is left uncertain by the pleadings and proof j but an inquiry in regard to it is unnecessary, because, supposing her to have been of Ml age, the defendant did not have-adverse possession long enough to defeat her title-.
 

 Per Curiam. Decree for- plaintiffs.