## Hogan *vs.* Jaques and others.

1. Where a deed expresses a consideration, though merely nominal, and never paid, no use results to the grantor, and parol proof that the conveyance was intended to be in trust for the grantor, will not raise a trust.

2. A trust estate cannot be sold by execution.

3. That a deed absolute on its face was really given as a security for a debt, and intended only as a mortgage, may be shown by parol proof; but

the proof must be very plain where the debt does not remain, or is considered as paid by giving the deed.

4. A verbal promise by the grantee to the grantor, that he would re-convey the land upon receiving back the amount of his debt, will not be enforced; much less against a purchaser for valuable consideration, without notice.

This cause was heard upon bill, answer, and proofs.

*Mr. Ranney*, for complainant.

*Mr. T. Runyon*, for defendants.

THE CHANCELLOR.

The object of this suit is, that the defendant Jaques, and his daughter, the defendant Mrs. Mitchell, may be adjudged each to hold a tract of land, of which each respectively has the legal title, as trustee for the complainant, and may be compelled to re-convey the same to the complainant, upon his re-paying to the defendant, Jaques, certain moneys advanced by Jaques for the complainant's benefit, which he tenders himself ready to re-pay.

Amzi Dodd, on the 22d of July, 1863, held in fee, in trust for the complainant, a lot in the town of Orange, at the nortwest corner of the intersection of Main and Mechanic streets. On this lot were several mortgages. The executors of C. R. Ackers, who held one of them, obtained a decree of foreclosure to pay all these mortgages, and the premises had been sold under that decree. They had been sold for a sum much below their value, and considerably below the amount due on the foreclosure decree. This sale was set aside; after which the defendant, Jaques, at the request of the complainant, advanced the money and purchased the mortgages and decree, which were assigned to him. These assignments were dated on the 20th day of July, 1863, and were acknowledged on the 22d day of that month. On the 22d day of that month, Dodd, together with the complainant, and their respective wives, conveyed this lot to the

defendant, Caroline E. Mitchell, by deed, without any covenants, except against the acts of Dodd. The consideration was $100 in hand paid, and, by the *habendum* clause, was for the use of the grantee and her heirs. On the 5th of September, 1863, Samuel W. Baldwin conveyed to the defendant, Jaques, in fee, a lot on Mechanic street, in rear of the corner lot, by deed dated on that day, in consideration of $1200; the uses were declared to the grantee and his heirs, and the deed contained full covenants as to title and against encumbrances. This Baldwin lot had formerly been annexed to the corner lot, and was conveyed by Dodd and the complainant to Baldwin, in December, 1859.

Harriet Pierson had recovered a judgment against Hogan in the Essex county Circuit Court, in 1857, for $434, which remained unpaid. Jaques, with Hogan's consent, purchased this judgment, and Hogan's right and title to both lots was levied on and sold, by virtue of an execution on that judgment, to the defendant, Caroline E. Mitchell, who received the sheriff's deed; it was dated the 10th of September, 1863, the day of the sale. These deeds were to Mrs. Mitchell in her maiden name, Caroline E. Jaques, she being then unmarried, and a minor under seventeen years of age.

The complainant alleges that Jaques advanced the money for these mortgages and the judgment, to aid him, so that the property might be retained, and need not be sold; and that the conveyance to Jaques' daughter by Dodd and himself, was made at Jaques' suggestion and request, with the agreement that the title was to be held in trust for the complainant, and upon some objections made by Jaques against Dodd, as trustee.

The complainant alleges that the Baldwin lot was conveyed by him and Dodd to Baldwin, for about $1600, with the agreement that Baldwin would, at any time, re-convey it to him, upon payment of that sum, being a debt of Hogan to Baldwin, to secure which the lot was conveyed.

A great amount of evidence has been taken of parol declarations and agreements of the parties, as to the trust. It

L *

is objected, on part of the defendants, that a trust cannot be proved by parol declarations or agreements, it being within the statute of frauds, which enacts, "that all declarations or creations of trust of any lands shall be manifested by writing, signed by the party who may declare such trusts, or else shall be utterly void." The statute provides that it shall not affect any trust that may arise or result by implication or construction of law.

There is no question as to the mortgages or decree purchased by Jaques; he paid for them, and is entitled to the amount due on them; and the complainant would be entitled to redeem the corner lot on payment of them, were it not for the conveyance to Mrs. Mitchell. The whole question as to the corner lot is, whether that conveyance was to her in trust for complainant. It is a deed of bargain and sale for a money consideration, and the uses are declared in the deed. The deed was from Hogan, as well as his trustee, and conveyed the lot free from any trust to which it had been subject in Dodd's hands. This was the legal effect of the conveyance. If any new trust was created, it must arise from something at or after the conveyance. If it was an express trust, it must have some declaration in writing, signed by the grantee. There was none—none is pretended.

The complainant places his claim upon the ground that the conveyance was without any actual consideration, and with the understanding that it was in trust for him.

This is not one of the cases in which a trust results or arises by implication of law. Formerly, it was held that a feoffment, made without any consideration, would raise a resulting trust for the grantor, and this consequence governs in a conveyance by deed, where there is no consideration, and where the uses are not declared. But when the deed expresses a consideration, though it is a mere nominal one, and though it was never paid, no use results to the grantor, and parol proof that the conveyance was intended to be in trust for the grantee will not raise a trust.

This was so held in England, in *Leman* v. *Whitley*, 4

*Russ.* 423, and *Fordyce* v. *Willis*, 3 *Bro. C. C.* 577; and in New York, in *Rathbun* v. *Rathbun*, 6 *Barb.* 105; also, in the Court of Errors in this state, in *Baldwin* v. *Campfield*, 4 *Halst.* 891. Justice Elmer, *p.* 903, says, "no trust arises upon a man's own deed, whether there was, in fact, any consideration paid or not; as between the parties, a voluntary deed is just as binding as any other. There can be no doubt that any parol declarations of the defendant, or any understanding between him and the plaintiff, not reduced to writing, would be inadmissible to show a trust." The same doctrine is sanctioned in 2 *Story's Eq. Jur.*, § 1199; *Hill on Trustees* 107; *Browne on Statute of Frauds*, § 111.

No title whatever was acquired by Mrs. Mitchell by the sheriff's deed to her. At or after the judgment, Hogan had no legal estate in the premises; and it is settled in this state, that a trust estate cannot be sold by execution. Under the act regarding fraudulent trusts, it could have been reached and sold by supplementary proceedings, and therefore it was advisable, if not necessary, for Jaques to purchase or satisfy this judgment; but the sale under it was a nullity. It was held in this court, in *Combs* v. *Little*, 3 *Green's C. R.* 310, as also in the case of *Marlatt* v. *Smith*, 3 *C. E. Green* 108, affirmed by the Court of Errors, that a purchase at a sheriff's sale, upon a parol agreement with the defendant in execution that the land shall be held for his benefit, and that he shall be allowed to redeem, will be held to be a trust for the defendant. And if any title in this case had been derived from the sheriff's deed, it could be shown by parol that it was subject to such trust. As it stands, the deed from Dodd and Hogan conveyed to Mrs. Mitchell the legal title, and no trust results from the fact that no consideration was paid, and no express trust can be shown by parol proof.

As regards the Baldwin lot, the complainant claims that the deed to Baldwin, though absolute on its face, was given as security for a debt of $1600, and with an agreement to

re-convey on payment of that sum. It is well settled, that if a deed, absolute on its face, was really given as security for a debt, and intended only as a mortgage, it is a mortgage, and that the fact may be shown by a written defeasance, or by parol proof. The proof in this case relied upon is the evidence of Baldwin, and of the complainant.

Baldwin says, the deed from Dodd and Hogan " was given to me for a balance which Mr. Hogan owed me for about $1500 or $1600; it was not less than $1500, and I think over that. Mr. Hogan suggested that I should take this land at a price we could agree upon, and save him paying interest; this debt of mine was on interest, I objected at the time to take the property; I did not want it; I took it with the understanding that I would deed it to him again upon the liquidation of that debt." Hogan says, " I conveyed it to Baldwin; the consideration was between $1500 and $1600, under an understanding when I conveyed it, that when I got able I was to take the lot back for my son, just the same as when I sold it—the same price." From this, it is insisted, that this conveyance was merely a mortgage.

There is a distinction between an agreement that a deed shall be only security for a debt—a redeemable mortgage—and an agreement made at its execution to re-convey the property upon being paid back the consideration, or some other sum; but the line is very shadowy and indistinct that divides one from the other.

We find it laid down that an agreement, to be sufficient to convert an absolute deed into a mortgage, should be mutual, that is, that the grantor should be bound to pay the debt, and the grantee to re-convey on payment. *Coote on Mortgages* 19; *Holmes* v. *Grant,* 8 *Paige* 243; *Glover* v. *Payn,* 19 *Wend.* 518; *Robinson* v. *Cropsey,* 2 *Edw. Ch.* 138.

It is not, perhaps, necessary in all cases, to convert an absolute deed into a mortgage, that the liability of the grantor to pay the debt should remain; and yet a continuing debt · seems so much a part of our idea of a mortgage, that the proof that an absolute deed was intended as a mortgage must

be very plain where the debt does not remain, or is considered as paid by giving the deed. In this case, the object in giving the deed for this lot, was to stop the interest on a debt that was liable to interest. The deed was, without doubt, accepted as a payment of the debt, and Hogan was by it discharged from all other liability for it. Neither party states that it was conveyed by way of mortgage. Baldwin did not want to take the lot; he objected to it. He could not have had any objection, if it had been merely mortgaged to him; and the inference is very strong, that in this state of affairs, a mortgage would have been given, if one had been intended. Both parties state it was a conveyance, with an agreement to re-convey. Jaques was not told that Baldwin held as mortgagee, either by Hogan or Baldwin. The title he was to get, and expected to get, according to their own statements, was the fee. They say, he was told that Baldwin held it for Hogan, not as mortgagee for himself for an amount greater than its value. Hogan swears that it was conveyed to Jaques in trust for him, when he paid Jaques the $1200, and interest. The whole circumstances show that it was not considered a mortgage to Baldwin for $1600, or any other sum; and the fact that Baldwin conveyed to Jaques, with full covenants of title and right to convey, shows that he did not consider he was assigning a mortgage. I think the conveyance to Baldwin was not made or intended as security for a debt, or in any way as a mortgage, but that the property was accepted in payment of the debt; and Baldwin made, and intended to make, a verbal promise to Hogan, made by parol so as not to embarrass the title, that he would re-convey to him upon receiving back the $1600, without interest. This contract, of course, could not be binding, either at law or in this court. If it should be considered as a mortgage to secure $1600, a debt then due, Hogan could not redeem, either from Baldwin or Jaques, except by paying the $1600, with interest from the date of the deed. This was not the intention of the parties; it was to re-convey for $1600, without interest. Again, this

claim to hold the equity of redemption is inequitable as against Jaques, who had no notice of it. He bought from Baldwin, who had on record the absolute title. A concealed agreement to permit Hogan to redeem is against the spirit and object of our registry laws, and, if permitted to prevail, would overthrow them and defeat their object. No care in searches or inquiries would protect a purchaser from the effect of such agreement. Jaques was a purchaser for a valuable consideration, and although he might have been told that Baldwin held for the benefit of Hogan, yet, in taking the title, he had no notice or no reason to suspect that the title, when conveyed to him with Hogan's assent, would be only the lien of a mortgagee for his debt.

I am of opinion that the complainant has not made out a title to relief as to either lot, and that the bill must be dismissed, with costs.