## TARLTON v. GRIGGS.

(Filed November 5, 1902.)

1. DEEDS—*Execution—Delivery.*

   A deed is not executed and will not be enforced where the maker has not gone so far with its execution that he can not recall or control it.

2. DEEDS—*Delivery.*

   A deed is only operative from the time of actual delivery.

3. DEEDS —*Execution —Delivery —Acknowledgments —Presumptions.*

   The delivery of a deed will not be presumed from the acknowledgment of the husband and the acknowledgment and privy examination of the wife.

ACTION by Sarah J. Tarlton against Mary A. Griggs and others, heard by Judge *T. A. McNeill* and a jury, at December (Special) Term, 1901, of the Superior Court of ANSON County.

Plaintiff is the widow of Willis R. Tarlton, from whose will she dissented and filed her petition in this special proceeding, praying to be endowed of the land whereof he was seized and possessed during their coverture, and alleges that her husband died seized and possessed of the land in controversy, described in the petition. Defendants, who are his devisees, in their answer, aver that said Willis R. Tarlton duly conveyed by deed, in which plaintiff joined in relinquishment of her dower, the land of which she asks to be endowed, to the defendants, J. B. Tarlton and others, and plead the said deed as an estoppel in bar of her recovery.

Plaintiff, replying, says that the deed so signed and acknowledged before a Justice of the Peace by her said husband and herself, whose privy examination was taken, was never *delivered* by her said husband, or any other person under his

TARLTON *v.* GRIGGS.

direction, to the grantees named in said deed, nor to any one for them, and that the same passed no title to the grantees, is of no effect and void; that her said husband was, at the time of signing the same, and continued so to be up to and at the time of his death, in possession of the land described therein, cultivating and paying the taxes on the same.

The issue joined is: "Is plaintiff entitled to dower in the land described in the complaint?" The exceptions relied upon by plaintiff are to the refusal of the Court to give, among others, the following instructions: "5. That a deed is not considered executed, and the Courts will not enforce the same, when the maker has not gone so far with its execution that he can not recall or control it, and if the jury shall find from the evidence that the maker, W. R. Tarlton, could control and recall said deed, they will answer the issue 'No.'" "6. That a deed is only operative from the time of actual delivery, and if the jury shall find from the evidence that there was no actual delivery of said deed until after the death of the maker, W. R. Tarlton, said delivery can not defeat the right of the widow to dower in said land, and they will answer the issue 'No.'"

The evidence relating to the *delivery* is as follows: "The deed in due form signed 'W. R. Tarlton (Seal); S. J. Tarlton (Seal),' then follows the acknowledgment and privy examination of plaintiff in the statutory form taken before J. T. Redfearne, Justice of the Peace, under his seal.

Z. T. Redfearne, introduced by plaintiff, testified: "Several years prior to the 26th November, 1895, Shepherd, a son-in-law of W. R. Tarlton, came to me and said that Tarlton wanted me to go over to his house and fix up some papers. I went and drew several deeds for him, and a will. The deeds were executed by him and his wife, and the will by him. Tarlton told me to keep the deeds and will, and, if not called for during his life, to deliver them after his death. Two or

three years afterwards Shepherd came for me again; he wanted me to go again to Tarlton's to fix up some papers. I went, and Tarlton said that he had deeded some of the land, and wanted to make some changes in the papers that I had previously prepared for him. He then destroyed the first deed prepared by me under his direction. I drew a consolidated deed to all his children, except Eliza Tarlton; I then drew a deed for Eliza conveying fifty acres of land to her; then a deed conveying ten acres to Tarlton's wife, Sarah Jane Tarlton; Tarlton signed all the deeds; Mrs. Tarlton signed the first, the consolidated deed, dated November 26, 1895, to J. B. Tarlton and others, and when asked to sign the deed to Eliza, she declined to do so. Then W. R. Tarlton said, 'If I can not make deeds to all my children, I will not make deeds to any of them.' Mrs. Tarlton retired, and Mr. Tarlton told me that his wife was out of humor that day, and for me to carry them home with me, and that he thought she would consent to sign them in a few days, and if she did consent he would carry her over to my house to sign them. I kept the papers for several years just as they were. I thought of leaving the State, and sent word to him to know what disposition he desired me to make of his papers, and Shepherd, his son-in-law, came for them and I let him have them. I knew nothing more of them until after Tarlton's death. At the time of drawing them I was an acting Justice of the Peace."

Allen Watson, introduced by the plaintiff, testified: "A bundle of papers was placed in my hands by Shepherd some time before Tarlton's death. I was requested to keep them. I did not know what the bundle contained until after Tarlton's death. I was told to keep the papers without further directions. After Tarlton died, Mr. C. C. Griggs came to me and inquired if I had any of Tarlton's papers. I told him that I did, and gave the bundle of papers to him. Tarlton

never spoke to me about the papers, and I have never received any instructions from him one way or the other."

Frank Shepherd, introduced by defendant, testified: "I was present at the time the deed dated November 26, 1895, was made. This was the deed from Willis Tarlton to J. D. Tarlton and others. Z. T. Redfearne, Mr. and Mrs. Tarlton were the only ones present. Mr. Tarlton told Redfearne to take the papers and keep them till his death and then to deliver them to his executor. I married the daughter of Tarlton, and she and I are parties to this action. I afterwards got the papers from Redfearne and carried them to Watson and he kept them until after Tarlton's death. I went after Redfearne at each of the times that he prepared papers for Tarlton. Redfearne drew no deed when he made the will. The will was drawn in 1890. He sold me a part of the land that was divided in the will. Tarlton had this joint deed drawn, dated November 26, 1895, and a deed to his daughters, and one to his wife. His wife signed the joint deed and the one to herself, but refused to sign the deed to his daughter. He never said that he did not want to make deeds to a part of his children unless he could make deeds to them all. He did not say that his wife was out of humor that day and that she would get all right, and that he would carry her over to Redfearne's to sign the other deeds. Tarlton did not destroy any papers."

C. C. Griggs, introduced by defendant, testified: "I am son-in-law of Willis R. Tarlton, deceased, and one of the defendants in this action. The deed from Willis R. Tarlton to J. B. Tarlton, dated November 26, 1895, conveys all the land that Willis R. Tarlton was possessed of at the time of his death, except about 50 acres. I got the deed from Allen Watson on Saturday after Tarlton's death, which was on Thursday before. The grantees have been in possession of the land since Tarlton's death. I went to Watson and asked

him if he had Tarlton's papers, and he gave me a bundle of papers; this deed was found in the bundle. I didn't know that Tarlton had this deed, and didn't know at that time that it was in this bundle of papers. I do not know that Watson was the agent of Tarlton or that he held the papers in the capacity of his agent. I brought the deeds to the court-house and had them recorded, and have had them in my possession since." Verdict and judgment for defendants, and plaintiff appealed.

*Robinson & Caudle,* for the plaintiff.
*Jas. A. Lockhart,* for the defendants.

COOK, J., after stating the case: Plaintiff was clearly entitled to have the instructions prayed for given to the jury. We learn from the sages of the law, Sir Edward Coke and Sir William Blackstone, that no title passes by deed unless it is *delivered*. What acts constitute delivery, and when the delivery becomes complete, have been the subjects of much discussion in many of the decisions of our own court as well as in those of other jurisdictions. "No particular form or ceremony is necessary; it will be sufficient if a party testifies his intention in any manner, whether by action or by word, to deliver or put it into possession of the other party; as, if a party throw a deed upon a table, with the intent that it may be taken by the other, who accordingly takes it; or, if a stranger deliver it with the assent of the party to the deed. 1 Phillips Ev. (2d Ed.), 467; 1 Coke Lit., 36a. Where the deed was executed by the donor in the presence of the donee, and then attested by the witness, who immediately retired leaving the deed so executed lying on the table in the presence of both the donor and the donee (which it seems was, after his death, found among the donee's aunt's papers, a presumption is raised that the deed was delivered to the donee.

*Levister v. Hilliard,* 57 N. C., 12. There must be an intention of the grantor to pass the deed *from* his possession and beyond his control, and he must *actually do so* with the intent that it shall be taken by the grantee or by some one for him. Both the intent and act are necessary to a valid delivery. Whether such existed is a question of fact to be found by the jury. *Floyd v. Taylor,* 34 N. C., 47. But if the grantor did not intend to pass the deed beyond his possession and control, so that he would have no right to recall it, and did not do so, then there would be no delivery in law; the facts of which must likewise be found by the jury. No presumption of delivery arises so long as the deed remains in the possession of the maker; but, *per contra,* the presumption is that it had not been made and the contrary has to be proved. *Kirk v. Turner,* 16 N. C., 14; *Baldwin v. Maultsby,* 27 N. C., 505; *Newlin v. Osborne,* 49 N. C.,157; 67 Am. Dec., 269. No title can pass by the signing, sealing and attestation of a deed; there must also be a *delivery* which is a necessary agency by which by which the title moves from one person to another. But when the deed, properly executed, is found out of the possession of the maker and in the possession of some other person, then the law presumes the *fact* to be that it was *intentionally* delivered to or for the grantee. *Snyder v. Lackenour,* 37 N. C., 360; 38 Am. Dec., 685; *Ellington v. Currie,* 40 N. C., 21; *Airey v. Holmes,* 50 N. C., 142; *Phillips v. Houston,* 50 N. C., 302; *Robbins v. Rascoe,* 120 N. C., 79; 38 L. R. A., 238; 58 Am. St. Rep., 774.

But if the deed passed out of the maker's possession by accident, fraud or mistake, or was not intended to be delivered to the grantee or any one for him, then such presumption of the fact of delivery may be rebutted. *Love v. Harbin,* 87 N. C., 249; *Whitman v. Shingleton,* 108 N. C., 193; *Helms v. Austin,* 116 N. C., 751.

In *Snyder v. Lackenour, supra,* Judge Gaston, speaking

for the Court, says: "The deed of gift from George Lacke-
nour to the plaintiff, was executed in the absence of the plain-
tiff, was attested in the presence of the donor by two wit-
nesses, and at the request of the donor was proved and reg-
istered.   We hold, therefore, unhesitatingly that the defense
set up that it was not delivered, is in law unfounded."   In
*Phillips v. Houston, supra,* where the donor handed the deed
to a third person, signed and sealed, to have it proved and
registered (*without retaining* any authority or power to con-
trol it) which was returned to him, and he then delivered it to
another person in like manner and for the like purpose, but
who neglected to have it registered until after the donor's
death, it was held that the delivery to the *first* person to
whom it was handed, was a complete delivery, the point being
that the donor absolutely parted with the deed with no inten-
tion of exercising any further control over it.

But when the grantor parts with the possession of the deed,
*showing* an intention that it should not *then* become a deed,
but delivered merely as a depository and subject to the future
control and disposition of the maker, then the delivery would
be incomplete and no title could pass.   *Rae v. Lovick,* 43 N.
C., 89.   This case is specially applicable to the case at bar.

In the cases above cited, where delivery was made to the
Clerk of the Superior Court for probate, or probated and
registered, *no condition or purpose* was expressed inconsist-
ent with an intent to make a complete and absolute delivery.

Our conclusion is, that there is no delivery of a deed
where the maker has not gone so far with its execution that
he can not recall or control it; and if from the evidence the
jury should have found that Tarlton intended that Redfearne
should hold the deed subject to his further direction and
control, then there would have been no delivery.   And if
there was no delivery made when he handed it to Redfearne,
then no delivery could have been made after Tarlton's death

(*Baldwin v. Maltsby, supra*), and his Honor erred in not giving the instructions prayed for.

Defendants, however, contend that delivery is presumed from the acknowledgment of the husband and acknowledgment and privy examination of the wife (plaintiff) before the Justice of the Peace. They "acknowledged the due execution of the foregoing deed," and that by "due execution" the law presumes the fact to be that it *had been delivered.* This contention is without merit and can not be sustained. To convey title free from incumbrance, the acknowledgment and privy examination of the wife is a pre-requisite imposed by law. Having complied with the statute, the deed would then be ready for delivery—not delivered. Her acknowledgment and privy examination can not be taken as an admission that the deed had been made, for, had the delivery been made *before* it was taken, the deed would have been invalid as to her rights; if so, why presume that an invalid delivery had been made, when the object of taking it was to make a valid one which would bar her dower right? Should the law impose such a presumption as is contended for, great hardship and gross injustice would follow. A deed thus prepared or "executed" for delivery, and in fact not delivered on account of mischance, awaiting the compliance of bargainee, or an opportunity to meet and perfect the agreement, or upon his default, etc., and then found in the possession of the maker (among his papers, perhaps) after his death, would impose upon the widow and devisees or heirs at law the burden of proving that it had *not* been delivered. How could this be done? From what source could they get the evidence to prove the non-occurrence of such a presumed fact? No evidence showing that the deed was ever out of his possession, yet should they be required to *prove* that it never was? Then, if such proof is not made, she would be debarred of her dower and the heirs at law or devisees deprived of their land,

for which not a dollar had been paid. Surely this can not be law.

We can find no decision to support such a proposition. We are cited to *Redman v. Graham,* 80 N. C., 231, where the headnote says: "The execution of a deed *includes delivery,* and therefore the adjudication of a probate judge that the execution has been duly proved is a judicial determination of the fact of delivery, which can not be *collaterally* impeached." (The italics are ours.) Upon an examination of the case, we find that it shows a state of facts similar to many of the others above cited: "The deed for the land was prepared and executed by the said defendants and their wives, the latter being privily examined, and duly proved before the Judge of Probate, and *left in his custody"* (italics ours), without expressing any intention whatsoever of exercising any further control over it. Had defendants instructed the Judge of Probate to hold the deed subject to their order, could it be held by a court that the delivery would be complete, and that title passed to the grantees? We think not.

In the case of *Baldwin v. Maltsby, supra,* the deed was signed and sealed and attested by two witnesses, and the maker declared to the witnesses that it was "his act and deed," and afterwards told a friend, "I am satisfied with the way I have disposed of my negroes; the deed of gift is in my trunk; I wish you would deliver it to Charles Baldwin immediately after my death." No presumption of delivery arose there. So, in the case at bar, no presumption of delivery arose from the acknowledgment of the husband, or from the acknowledgment or privy examination of the wife. When he handed the deed to Redfearne, it had been duly prepared and properly "executed," according to the forms and requirements of law, and ready for delivery; nothing else appearing, this would have been a delivery in law. But there

is evidence tending to show that such delivery was for a temporary purpose, and that he intended to exercise further control and authority over it, and, if he did, it did not then become his deed.

New Trial.