CONNOR, J., concurring. WALKER, J., concurs in concurring opinion.
The plaintiffs, devisees, children and heirs of Ebenezer Gaylord, deceased, seek to recover possession of land which formerly belonged to their father, Ebenezer, from their uncle, Sam Gaylord, who is now in possession, claiming to own the land under an alleged deed to himself from his brother Ebenezer, bearing date 13 November, 1884.
The evidence tended to show that some time in the year 1884 Ebenezer Gaylord, having some trouble with his first wife, Deborah, and his father-in-law, in order to place his property so that his wife could establish no claim upon it in case of litigation, had a deed prepared and made it over to his brother, with the understanding and agreement that Sam was to give the deed back to Ebenezer when the latter should call for it. No consideration was paid by Sam, the defendant, or any one for him, and, so far as it appears, Ebenezer continued in control and possession of the property till his death, in November, 1898; that Ebenezer afterwards married a second wife, named Mary, and had by her a number of children, plaintiffs in the suit, and, while it is not so stated in the record, it was admitted on the argument that Sam had obtained the possession of the property after the death of his brother, on marrying (224) Mary, his brother's widow.
Speaking to the facts attending the transaction, Dr. Bullock, who seems to have prepared the deed, testified as follows: "Sam Gaylord asked me to come to my office; that Ebenezer wished to make him a deed, as he was in trouble, and for fear that his wife would get a part of his property in a suit she wanted to bring. I told him Ebenezer was doing a dangerous thing. The reason I said this was because it was a conditional deed. He said, `I am making this deed over to my brother Sam to keep Deby, my wife, from getting hold of a portion of my property.' These were his very words. Said he was willing to trust his brother to return the deed when it was all over. I then probated it. Sam promised to return it. After Ebenezer died, Sam came to me and told me Ebenezer had made him a deed, and asked me about registering it. I told him he had agreed to return it. I had nothing to do with it. The purpose of the deed was to cut his wife out of the land. No money was paid then, though it may have been paid before or after that."
Columbus Gaylord testified as follows: "Ebenezer Gaylord was my father. He died in 1899. The other plaintiffs are my brothers and sisters, and children of his second marriage; they are minors." (Counsel reads description of land in deed, will and complaint.) "Witness says he knows it; it is all same land. My father's first wife was Deborah. His second wife, my mother, is named Mary. Defendant is in possession of this land. I heard a conversation between my father, the grantor in the deed, and the defendant, a year or two before he died, about the deed. Defendant told my father that the paper he held he burned up." *Page 184 
W. L. Judkins testified as follows: "I knew Ebenezer Gaylord and Sam Gaylord; was present at the time he signed the deed to Sam Gaylord. Both witnesses to the deed are dead. The argument between Ebenezer and Sam was that Sam was to hold the deed until Ebenezer had made some arrangements, then Sam was to return the deed to his brother. Ebenezer was having some trouble with his wife — I don't know what — with her father and about farming. I don't know what the trouble was. (225) Afterwards they met in my presence and Ebenezer approached him about the deed, and Sam told him he had made way with it; he did not have it. No money was paid. He made this deed to his brother until he could arrange his troubles at that time; seemed to be a deed to help him arrange things. No interest in suit. I never saw the deliverance of it; wasn't there when he handed it to him. Trouble was over his wife and wife's father. She was talking about bringing a suit against him for her separate maintenance. He had some trouble about his farming up there, and seemed to want to leave this deed in the hands of his brother until he could settle these troubles. It was all the land he had that I knew of."
R. W. Harris testified as follows: "I have heard a conversation between Ebenezer and Sam Gaylord, three years before Ebenezer died. Ebenezer asked him about the deed. Sam said he didn't have it; he had burned it. Ebenezer said, `It's a damn lie; you got it to give my folks trouble about when I am dead.' I heard him talking about it before, and they all seemed to know that Sam had it. This time they had a quarrel about it."
W. W. S. Waters testified: "I heard Ebenezer say to Sam, `I have given you that deed as a brother, and you as a brother ought to give it back, as you promised.' Sam said, `I have destroyed it.' Ebenezer said, `You agreed to return it to me; I now want it back.'"
At the close of the testimony of plaintiffs, on motion of defendants, there was judgment as of nonsuit, and plaintiffs excepted and appealed.
The alleged deed recites a valuable consideration paid by defendant Sam Gaylord, the grantee in the deed; contains a habendum, "to have and to hold the said tracts of land, free and clear of all privileges and appurtenances thereunto belonging, to the said Sam M. Gaylord and his hairs in fee simple, forever," and also (226) the covenants, "that the grantor is seized of the premises in fee simple and hath the right to convey the same; that they are free from all encumbrances, and that the grantor will warrant and defend *Page 185 
the title to the same against the lawful claim of all persons," etc.; and the authorities are to the effect that in a deed of this character, giving on the face clear indication that an absolute estate was intended to pass, either by the recital of a valuable consideration paid or by an express covenant to warrant and defend the title, no trust would be implied or result in favor of the grantor by reason of the circumstance that no consideration was in fact paid. Dickenson v. Dickenson, 6 N.C. 279; Squirev. Harder, 1 Paige Chan., 494; Hogan v. Jaques, 19 N.J. Eq., 123; Lovettv. Taylor, 54 N.J. Eq., 311; Jackson v. Cleveland, 15 Mich. 94. And while the opinion in Dickenson v. Dickenson, supra, has been so far modified inBarbee v. Barbee, 108 N.C. 581, as to permit proof that in fact no consideration was paid or that the same was different from the recital, this modification was on a question not presented here, and in no way affects the principle that in a written deed purporting to pass to the grantee an absolute title the recital therein of a valuable consideration paid will prevent an implied or resulting trust in favor of the grantor arising from the lack of consideration. Thus Shepherd, J., for the Court, delivering the opinion in Barbee v. Barbee, 108 N.C. at p. 584, after saying that while the trend of our State decisions heretofore had favored the position that the recital in a deed of a valuable consideration paid should be held to be an estoppel for all purposes, yet "The overwhelming weight of American authority is in favor of treating the recital as onlyprima facie evidence of payment as in the case of a receipt, the only effect of the consideration clause being to estop the grantor from alleging that the deed was executed without consideration in order to prevent a resulting trust."
This doctrine of a trust or use resulting to a grantor when there was no consideration paid was a rule of the common law incident chiefly to conveyances of feoffment, and never obtained when there was a contrary declaration made by the grantor at the time of the conveyance, either oral or written, and in the rare instances where the doctrine (227) is applicable to written instruments it is never allowed to prevail when there is a contrary intent clearly expressed in a written deed. Thus, in Jackson v. Cleveland, supra, Campbell, J., said: "Accordingly, either the mention of a consideration, although nominal, or the declaration of uses will prevent a resulting trust and confirm the title in the feoffee. A court of chancery has never ventured against the expressed will of the donor appearing on the face of the deed to take the use from the donee and give it back to the donor. In other words, uses annexed to a perfect gift, however gratuitous, were enforced."
And Walton, the Chancellor, in Squires v. Harder, supra, said: "No resulting trust can be raised or effectuated to the express terms of a conveyance and in favor of a grantor. In this case the complainants *Page 186 
have given an absolute conveyance, with warranty; they are therefore estopped from alleging that a part of the consideration was received in their own money."
Nor do we think it permissible upon the evidence that the plaintiffs should engraft a parol trust on a deed of the kind presented here by express declaration or agreement. The seventh section of the English Statute of Frauds, forbidding "the creation of parol trusts or confidences of lands, tenements or hereditaments, unless manifested and proved by some writing," not being in force with us, and no statute of equivalent import having been enacted, these parol trusts have a recognized place in our jurisprudence and have been sanctioned and upheld in numerous and well-considered decisions. Avery v. Stewart, 136 N.C. 436;Sykes v. Boone, 132 N.C. 199; Shelton v. Shelton, 58 N.C. 292;Strong v. Glasgow, 6 N.C. 289. Upon the creation of these estates, however, our authorities seem to have declared or established the limitation that except in cases of fraud, mistake or undue influence, a parol trust, to arise by reason of the contract or agreement of the parties thereto, will not be set up or engrafted in favor of the grantor upon a written deed conveying to the grantee the absolute title, and giving clear indication on the face of the instrument that such a title was intended to pass. Dickenson v. Dickenson, supra; Bonham v. Craig, 80 N.C. 224; Jackson v. Cleveland, supra, reported also in 90 (228) Amer. Dec., 226, with a full and learned note on this phase of the doctrine; Dean v. Dean, 6 Conn. 285; Cain v. Cox, 23 West Va., 594, 605; Dyer v. Dyer, White and Tudor Leading Cases in Equity (part 1), pp. 314, 344, 354, 355, 356, etc.
In this last reference will be found a comprehensive and very satisfactory treatment of this question in the notes by the American editor, in which the writer refers to the North Carolina decisions as establishing the proposition stated, and, among other things pertinent to the inquiry, says: "The second head (that presented here, when the deed purports to be for a full and valuable consideration but is in fact gratuitous) is also capable of subdivision. The trust may be set up between the original parties or in favor of a third person. In the former instance the objection is twofold, under the provisions of the Statute of Frauds, and that the evidence contradicts a writing under a seal. See Porter v.Mayfield, 9 Harris, 264. The trust can not be alleged consistently with the deed, because it is impossible to believe that the grantee gave a full and valuable consideration for the privilege of holding the land for the use of the grantor. A deed may be regarded in two aspects; In one it is the means by which the title is conveyed; in the other, a memorandum of the terms and conditions of the transfer. If a man deliberately executes a sealed instrument, reciting that he has transferred *Page 187 
the right of ownership for value received, he should not be permitted to put the grantee to the proof of that which has been established with the utmost solemnity known to the law. This is the more true because such a disguise is generally adopted for some sinister purpose, to defraud creditors or deprive a wife of dower. See Murphy v. Hubert, 4 Harris, 50. If there be any instance to the contrary, it is better that the grantee should suffer for his folly in putting the transaction in a form contrary to the truth than that the stability of titles should be endangered by rendering it impossible to frame a conveyance that shall be secure from attack. Leman v. Whetlet, 4 Russell, 323; Porter v.Mayfield, 9 Harris, 264, post; Hogan v. Jaques, 4 C. E. Green, 123. If it be proved that the deed was misdrawn through accident or fraud, or that it was procured through undue influence (229)(Legenfelter v. Richey, 8 P. F. Smith, 485), a trust may arisedehors the instrument; but this depends on other principles."
The law was so held in Bogett v. Hildreth, 103 Mass. 484, where Wells,J., used the following language in delivering judgment: "As to the share of Lucinda, conveyed by her to Sophronia, without consideration, and upon an agreement to reconvey or hold it for the benefit of Lucinda, no valid trust arises from that transaction. Walker v. Locke, 5 Cushing, 90. A voluntary deed is valid between the parties as a gift, and does not raise any trust in favor of the grantor. It is otherwise with a feoffment, and perhaps in other conveyances, wherever there is no declaration of the uses or the consideration is open to inquiry in determining the effect of the deed between the parties and their privies. Cruise Dig. (Greenleaf Ed.), title 11, ch. 4, p. 16, and title 32, ch. 2, p. 38. In this Commonwealth the consideration is not open to such inquiry. Supposing the deed in question to have been in the common form, the recital of a consideration and the declaration of the use to the grantee and her heirs in the habendum are both conclusive between the parties and exclude any resulting trust to the grantor. Squire v. Harder, 1 Paige, 494; Hill on Trustees, 112; 2 Story's Eq., p. 1197; Philbroke v. Delano, 29 Maine, 410; Farrington v. Barr, 36 N. H., 86; Graves v. Graves, 9 Foster, 129." See Haigh v. Reye, 4 L. R., Ch. Appeals, 473.
It was held in like manner in Wilkinson v. Wilkinson, 17 N.C. 378, that the recital of a valuable consideration is conclusive on the parties and those claiming under them, unless it is shown to have been introduced by mistake or fraud. Gaston, J., said: "The plaintiffs here allege that the defendant caused this consideration of value to be untruly inserted in the deed, either without the knowledge of the grantor or by availing himself of the misconception of the grantor, that it was a necessary form to give the instrument validity. The parol evidence is admissible to support this charge; for if it be made out, then the instrument *Page 188 
must be considered as if it had truly been what the contracting parties intended it to be. But it is admissible for this purpose only." The main current of decision is in this direction and establishes (230) that a trust can not be fastened on an absolute deed by evidence that the grantee paid no consideration or that he agreed to take and hold the premises from the grantor. Hutchinson v. Tindall, 2 Green., ch. 357; Robson v. Harwell, 6 Ga. 589; Squire v. Harder, 1 Paige, 494; Rathbun v. Rathbun, 6 Barb., 98; Philbroke v. Delano,29 Me. 410; Graves v. Graves, 9 Foster, 129; Leman v. Whetley, 4 Russell, 423. In Squire v. Harder the complainants sought to establish a resulting trust in land which they had conveyed with warranty, and were held to be estopped from showing that the grantee had only a life interest in the purchase money and that upon her death it would have belonged to them.
Thus it will be seen that, while in North Carolina, the seventh section of the English Statute of Frauds not having been enacted here, parol trusts will be upheld in given instances in favor of third persons, as in Shelton v. Shelton, supra, or even creditors of the grantor, as inShields v. Whitaker, 82 N.C. 516, such trusts will not be permitted or established here by reason of contemporaneous parol contracts and agreements between the parties when the same are in direct conflict with the expressed stipulations of the written deed and the entire purport of the instrument. In such case and to that extent the doctrine of parol trusts is subordinated to another well-recognized principle of law, that when parties have formally and explicitly expressed their entire contract, in writing, the same shall not be contradicted or changed by contemporaneous stipulations and agreements resting in parol. The position is well brought out and supported in the two decisions cited here: Dickenson v. Dickenson,supra, and Strong v. Glasgow, supra. In Dickenson v. Dickenson
it was held: "Where an absolute deed is made, parol evidence is not admissible to prove that the deed was made under any special trust (for the grantor), and that a valuable consideration was not paid." And, a few pages further on, in Strong v. Glasgow, a parol trust was engrafted or enforced where A. bought the property of B. at a sheriff's sale and took a conveyance of same under agreement with B. to hold the property for him. "For," said the Court, (231) "the complainants, not being parties to the deed, were at liberty to establish the original contract."
The same position is very well expressed by Green, J., in Cain v. Cox,supra: "In this state of facts, what was the operation of this deed of 1854, whereby Rezin Cain conveyed this tract of land to his sisters upon a parol trust for his own use? In Troll v. Carter, 15 W. Va. 578, this Court decided: `If land be conveyed by a deed of bargain and sale for a *Page 189 
merely nominal consideration, the courts of equity will not receive parol evidence to prove that the grantee agreed to hold the land for the grantor's use, as the deed in such a case must have been made for the express purpose of divesting the grantor of his title and vesting the same in the grantee. Such parol evidence, if admitted, would defeat the very purpose for which the deed was made, and must be regarded as contradicting the deed, and the general rule of evidence requires in such case the rejection of parol evidence.'"
In Adams' Equity, 28, it is said: "The declaration of trust by the parties is not, independently of the statute of frauds, required to be made or evidenced in any particular way. And, therefore, previously to that statute, a trust, whether of real or personal property, might be declared either by deed, by writing not under seal or by word of mouth, subject, however, to the ordinary rule of law, that if an instrument in writing existed it could not be explained or contradicted by parol evidence."
There are decisions to the contrary in other jurisdictions, and no doubt like expressions in some of our own cases. Thus, in Hall v.Livingston, 3 Del. Ch.an., 348, the chancellor, in a learned and elaborate opinion, contended that a parol trust could be set up against the grantee in a deed absolute on its face and without any allegation in the bill that the alleged trust was omitted by fraud or mistake. In this case it will be noted that in the first instance the trust declared was in favor of certain creditors of the grantor by lien and otherwise, and the decision might be reconciled on the principle that when there has been a severance of the legal and equitable estate by a valid agreement and a trust declared for a specific purpose the remainder of the interest not required for the purpose indicated usually results (232) to the grantor. Bond v. Moore, 90 N.C. 239.
There are also decisions to the effect that when there is a contract or agreement to hold in trust for the grantor or other parties to the deed, and in direct contravention of the written provisions the refusal to carry out the oral agreement would of itself constitute such a fraud that a trust could be engrafted in the deed ex malificio. Some of the cases so hold in England, though the statute of frauds, forbidding oral trusts, prevails in that country. This position, however, is clearly untenable in those cases where the agreement itself can not be established by competent testimony. The better-considered authorities are to the effect that there can be no actionable fraud arising from breach of an agreement, without more, when the law forbids that the agreement should be set up or established. Willsv. Robertson, 121 Iowa 381; note to Jackson v. Cleveland, supra, 90 Amer. Dec., 266.
And we are of opinion that the doctrine as it obtains with us, and *Page 190 
as heretofore stated, making, as it does, for the stability of titles which rest so largely on written instruments, and well supported by authority, should prevail, and, applied to the facts presented here, would forbid that a trust should be declared or established in plaintiffs' favor in case the deed from Ebenezer to Sam Gaylord had been fully executed. While we hold the opinion as indicated, and have expressed the views of the Court thereon at some length, because of the importance of the question, and of the suggestions that the claim of plaintiffs could in any event be sustained under the doctrine of parol trusts, we do not approve the ruling of the trial judge in dismissing the case as on judgment of nonsuit; for on the allegations and evidence we are further of opinion that an issue is presented as to whether the deed from Ebenezer to Sam Gaylord was in fact ever delivered. It is a familiar principle that the question of the delivery of a deed or other written instrument is very largely dependent on the intent of the parties at the time and is not at all conclusively established by the manual or physical passing of the deed from the grantor to the grantee. As said by this Court in Waters v. Annuity Co., 144 N.C. 670, "The fact that a policy in a (233) given case has been turned over to the insured is not conclusive in the question of delivery. This matter of delivery is very largely one of intent, and the physical act of turning over a policy is open to explanation by parol evidence." And the authorities are uniformly to the effect that, in order to be a valid delivery, the deed must pass from the possession and control of the grantor to that of the grantee, or to some one for the grantee's use and benefit, with the intent at the time that the title should pass or the instrument become effective as a conveyance. And this requirement that the intent to pass the title shall exist at the time, as applied to the facts presented here, is in no way affected by the doctrine very generally recognized, that a deed can not be delivered to a grantee by way of escrow, for, before a written instrument can become an escrow, the same incident must exist, "that the same should pass from the control and possession of the grantor with the intent at the time that it should become effective on the happening of a given event." Thus, in James v. Vanderhayden, 1 page, 385, it was held, that "When a bond, mortgage or deed was delivered to a third person, to be kept by him during the pleasure of the parties, and subject to their further order, the papers in question were not escrows, and that the third person was a mere depository." This doctrine of escrows, therefore, as stated, in no way affects the question, and in the case before us, if the instrument having been prepared and signed was then handed over by Ebenezer to Sam Gaylord, not with the intent that the title should pass, but with the intent that Sam Gaylord should hold the same as a depository or subject to the control and call of Ebenezer, *Page 191 
there was no delivery, and the title to the property descended to the plaintiffs, the children and heirs at law of Ebenezer, subject to the dower of his widow.
The views we have expressed will be found to accord with well-considered decisions in this and other jurisdictions; notably, Fortune v.Hunt, 149 N.C. 358; Tarlton v. Griggs, 131 N.C. 216; Roe v.Lovick, 43 N.C. 88; Wilson v. Wilson, 158 Ill. 567; Porterv. Woodhouse, 59 Conn. 568. In Tarlton v. Griggs, supra, Cook, J., delivering the opinion of the Court, said: "There must be an intention of the grantor to pass the deed from his possession and beyond his control, and he must actually do so with the intent that it shall be taken (234) by the grantee or by some one for him. Both the intent and act are necessary to a valid delivery. Whether such existed is a question of fact to be found by the jury. Floyd v. Taylor, 34 N.C. 47. But if the grantor did not intend to pass the deed beyond his possession and control, so that he would have no right to recall it, and did not do so, then there would be no delivery in law, the facts of which must likewise be found by the jury." And, further, in the same opinion, quoting with approval from the opinion of Roe v. Lovick, supra: "But when the grantor parts with the possession of the deed, showing an intention that it should not then become a deed, but delivered merely as a depository and subject to the future control and disposition of the maker, then the delivery would be incomplete and no title would pass."
In Porter v. Woodhouse, supra, Andrews, C. J., said: "The delivery of a deed implies a parting with the possession and a surrender of authority over it by the grantor at the time, either absolutely or conditionally; absolutely, if the effect of the deed is to be immediate and the title to pass or the estate of the grantee to commence at once; but conditionally, if the operation of the deed is to be postponed or made dependent on the happening of some subsequent event. A conditional delivery is and can only be made by placing the deed in the hands of a third person, to be kept by him until the happening of the event upon the happening of which the deed is to be delivered over by the third person to the grantee. But it is an essential characteristic and an indispensable feature of its delivery, whether absolute or conditional, that there must be a parting with the possession of the deed and with all power and control over it by the grantor for the benefit of the grantee at the time of delivery. Prestman v.Baker, 30 Wis. 644. The delivery of a deed is as essential to the passing of the title to the land described in it as is the signing of it or the acknowledgement. It is the final act, without which all other formalities are ineffectual. To constitute a delivery the grantor must part with the legal possession of the deed and of all right to *Page 192 
(235) retain it. The present and future dominion over the deed must pass from the grantor."
Nor is the objection available that there is evidence tending to show that it was the purpose and motive of Ebenezer in this transaction to put his property in such a position that his then wife could not successfully establish a claim upon the property in case of expected litigation between them. It is an undoubted principle that a court will not lend itself to establish a right growing out of a fraudulent transaction, a wholesome principle that has found expression in the maxim, ex malificio non oriturcontractus; but this principle only applies when it becomes necessary to invoke the aid of the court to establish or assert the right arising by reason of such a transaction, and does not obtain when the right otherwise exists. See York v. Merritt, 80 N.C. 285. If there were no delivery of the deed in question, the title never passed from Ebenezer, and the plaintiffs, his children, whether as devisees or heirs at law, can assert their claim by reason of the title that was originally his. It may be well to note that while the testimony touching the transaction could not have been admitted to establish a right or claim, as stated, when otherwise relevant it may still be received on the question of delivery.
From what has been said, it follows that the order of nonsuit will be set aside, and the cause will be submitted to the jury on some determinative issue involving the question as to whether the deed under which defendant claims was turned over to him with intent that the title should pass, or was the same to be held by defendant as a depository and subject to the control and call of Ebenezer, the grantor.
Reversed.