The canceled deed was filed as an exhibit, having been found among the papers of David, the elder, after his death. The plaintiffs were the children of David Tate, the elder, by his first wife; the defendants were his widow and a child born of her, and those of the issue of his first wife, who have received other deeds for part of the land included in the first. The prayer was to have the deed set up, to enjoin the suit of the widow for an assignment of dower, for an account of the rents and profits, and for a partition.
The answers and the proofs are so fully stated in the opinion of theChief Justice as to render any abstract of them useless.
That such a conveyance will be established against the donor himself if it was completed as a deed, was the point of the decision in Tolar v.Tolar, 1 Dev. Eq. Rep., 456, and upon principles that are clear beyond doubt. The equity is not in the nature of the right, but to have the benefit of a legal title, of which the evidence has been lost by spoliation. The relief is a reconveyance with covenants against intermediate encumbrances, or acts of parties making it.
The first question is whether the instrument ever was a deed. The answer of the youngest child disclaims, of course, all knowledge on her part, and against her the plaintiffs must prove their case strictly. Enough remains on the paper to satisfy us, upon inspection, that it was once executed. A part of the signature of one of the subscribing witnesses is still to be seen; and the widow of Hugh Tate proves (24) that her husband had it in his possession for safe-keeping in the form of a deed, and that upon his death the donor applied for it and took it away. These circumstances are not necessary in the case, except as confirmations of the positive testimony of Ezra M. Tate to this point. That witness is one of the donees, and assigned his share to the others to render him competent.
He proves that the deed was drawn by the late Judge Paxton, then at the bar; was executed by his father in compliance with a dying request of his mother; was attested by John Paxton and Hugh Tate, the brother of the donor; and was then delivered to Hugh Tate for the benefit of the children mentioned in it, and to be kept for them. The witness states that he was the eldest of those children, and was then about eighteen years old, and that the youngest was about the age of three years; that his father was not embarrassed, though somewhat indebted, and that he retained other property amply sufficient to pay his debts. *Page 28 
This evidence is precise and full, to the execution of the deed by signing, sealing, and actual delivery. When supported by the existence of the paper itself, by the appearances on it indicating execution, and by the testimony of Mrs. Tate that her husband had it in his custody as a deed, it seems to be entitled to full credence, notwithstanding the relation the witness bore to the instrument and bears to the parties. But whatever doubt might be raised, from those circumstances, of the credit to which this witness is entitled, it is dissolved by the answers of the defendants. That of Mrs. Tate states that at the date of the deed her husband, as he told her after her marriage, was indebted, and, for the purpose of securing his property to his children, that he executed the deed; but as he had extricated himself, that he should tear, or had torn, off his name, for the consideration had failed, and "therefore the deed ceased to have any legal or binding effect upon him." She adds, indeed, that she did not understand that the deed was delivered for the benefit of the bargainees; and that she is convinced "if it was delivered, as stated by the plaintiffs, it was conditionally to be redelivered to (25) the donor if he should be able to discharge himself from his debts." The opinion of this defendant, as expressed in the latter extract from the answer, is of little avail, as it is inconsistent with the words she gives as those of her husband, and with his professed object. If the deed ever had any "legal or binding effect," it could not "cease" to have it for any of the reasons or by any of the acts mentioned by him; and if the design really was to defraud creditors, the only opinion that can be entertained is that the parties would at least give to the transaction all the forms of a perfect and executed conveyance. The answers of the other defendants admit, almost by necessary implication, a delivery to Hugh Tate for the donees. They do, in express terms, admit the formal execution, attestation, and delivery to Hugh Tate. They do not expressly say that it was delivered to him for the donees, but that is almost a necessary inference from other parts of the answer. For the point insisted on is the insufficiency of such a delivery, in point of law, to give effect to the end. They say "that as all the children were under age, and some of them of very tender years, the deed was handed to Hugh Tate, to be kept by him until the said children should arrive at age and be capable of receiving said deed; and they insist that the donor had a right to cancel the paper, as it had never become his deed, by delivery to the bargainees themselves, or by their assenting to the delivery to Hugh Tate." In a subsequent part of the answer these defendants state more explicitly "that they are advised that as all the children were under age at the time the conveyance was made, the handing the deed to H. Tate did not amount to a legal delivery, but required the assent of the children to such delivery after their arrival at age, and *Page 29 
that before such assent, the father had a right to cancel the instrument." We are obliged to read this answer as putting the defense upon the legal points that, to the validity of a delivery, it is essential that it should be made to the party himself, or, if to a third person, that the party should expressly assent to it, and that no such assent was given here, or could be given, because the donees were infants. It does not deny that there was a delivery by the donor of the instrument as his deed privately, nor that the delivery to Hugh Tate was for the donees, (26) and that he might keep the deed on their behalf; but, on the contrary, the affirmative upon those points is taken to be admitted, not simply as being tacitly yielded, but as necessarily implied from the manner of stating the facts in the answer. But, whether the answer be viewed as barely not denying those facts, or as impliedly admitting them, is but of little consequence in this case. The case is not heard on the answers, but the facts are established by proof of witnesses. The answers are resorted to as tests of the witnesses' credit, and to that purpose they are equally effectual, whether they admit or evade the charges in the bill.
Upon the testimony of the witness, an absolute delivery for the benefit of the children is clearly established. That was intended to be a delivery to the children, one of whom, the witness Ezra, was present and assenting. The points made in the answer upon the legal effect of such a delivery do not admit of discussion. When the maker of a deed parts from the possession of it to anybody, there is a presumption that it was delivered as a deed for the benefit of the grantee; and it is for the maker to show that it was on condition, as an escrow. Such a delivery to a third person is good, and the deed presently operates, and infants may assent to such a deed to themselves, and their assent is presumed until the contrary appears. Here one assented at the time; the plaintiffs have since assented, and no express dissent by any one of them appears. The defendants have taken several conveyances for parcels of the land, but this is not a dissent to the instrument as a whole. Even if it were, it is not seen how their refusal to accept the estate conveyed to them could defeat the deed as to the other grantees. The doctrine is found in the old cases. Jaw v. Bury, 2 Dy., 167; Alford and Lea's Case, 2 Leon, 110; Butler's and Boker's Case, 3 Rep., 26; Whispdale's Case, 5 Rep., 119. And the learning upon the point is all collected in the modern cases of Souverbye v. Arden, 1 John. C. C., 240, and Doe v.Knight, 5 Bar. Cres., 671 (12 Eng. Com. Law Rep., 351). The plaintiffs are therefore entitled to the relief they ask for, unless precluded by the other matters brought forward in the answers. In the opinion of the Court, none of the objections are sufficient for (27) that purpose. *Page 30 
The first to be considered is that of the widow, that there was much disparity in the ages and health of the grantor and herself, and that she had no knowledge of the deed at the time of the marriage, but supposed the property to be in the donor from his retaining the possession; and therefore that the deed will, if set up, be a fraud on her. This position is founded on the act of 1784, which provides that conveyances made fraudulently to children, or otherwise, with the intention to defeat the widow of dower, shall be void as against her. The statute embodies the spirit of the decisions upon the customs of York and London upon this subject. It is not certain that it embraces the case of any conveyance made even during the marriage, whereby the donor actually divests himself of all property in the land conveyed, and intended primarily on advancement made to a child, although it may have the effect of defeating the widow. But if this case depended on this view of the question, we should consider more particularly the effect of the donor's remaining in possession, and the secrecy of the transaction as evidence that the purpose of advancing the children was merely colorable as against the wife. It is a further question whether any deed is within the act but one made during the marriage. It may be that the right of the widow must be inchoate at least before the deed can be construed to be intended to defeat her dower. I incline to say for myself that a deed made in contemplation of marriage is within the statute. It is, indeed, in England, the rule of equity as well as at law, that the widow is barred of dower if the husband puts his estate into trust immediately before the marriage, and expressly with a view to defeat her. But that rule has been disapproved of in point of justice, and it rests upon the ground that conveyancers had so long acted on that mode of barring dower, when there was a settlement, that it would be dangerous to overturn it. There, settlements are almost universal, and the wife and her friends look to one as a provision. But it has been more than once (28) doubted whether the same effect would be given to any transaction not technically within the rule, and whether a long legal term upon a nominal rent, likely to last beyond the life of the wife, created just before marriage, and for the sole purpose of defeating her, would be sustained in that country. 2 Powell Mort., 486 (Coventry's edition). With us there is no habit of marriage contracts, and a woman has a right to expect to enjoy the marital rights promised by the law to a wife, as much as the husband to look to those given to him. The statute ought to receive a liberal construction in suppression of the fraud forbidden by it, and be made commensurate with the principle of equity, which protects the husband from her covenous practises, at least as far as the conveyance of the husband is for his own benefit, or expressly to defeat the wife, and not truly for the advancement of *Page 31 
children. But were these parties reversed, and the wife had made this deed, the husband could not be relieved against it. There was no intention to defraud the wife, nor any other woman. The witness proves a different purpose in the party's mind — that of advancing the children by a former wife, by whose labor the estate had chiefly been accumulated. There is no evidence that the donor then had a second marriage in view with any woman; much less the one afterwards consummated, which did not take place until the expiration of two years. The Court cannot say that a deed, upon a meritorious consideration, in favor of children, is void as against every woman whom the donor may happen to marry at any distance of time, to whom notice of it cannot be brought. She takes her husband in his actual circumstances as they are while addressing her, and must by reasonable inquiries satisfy herself beforehand of the prudence of her choice. She may be deluded by appearances, it is true, but the deed cannot be said to have been intended to defeat her, unless it can in some way be connected, by the time of its execution, or otherwise, with the purpose of marrying some woman, and perhaps the one actually married. Cotton v. King, 2 P. Wms., 357, 674;Strathmore v. Bowes, 2 Cox's Ca., 28, and Goddard v. Snow, (29) 1 Russ. Ch. R., 485.
The widow and her daughter likewise insist that the deed was in fraud of creditors, and that it is iniquitous in the plaintiffs to set it up against them. How far an unlawful interest, which does not take effect on the original objects of it, can be alleged to vitiate the act into which it enters, in respect to third persons whose rights are incidentally affected by it, we need not here inquire. There is a clear answer to the objection upon the facts of this case, whatever may be the law. The only evidence of the donor's indebtedness is in the deposition of his son, and he states that his father reserved an ample fund for that purpose, and there is no proof that a single creditor then existing remains unsatisfied.
It is stated in some of the answers that the father became insane in 1830, and then the two sons, who are defendants, were appointed his guardians, and leased to one of the plaintiffs a house and lot in Morganton, which is part of the estate conveyed; and this is relied on in the argument as acquiescence in the destruction of the deed, especially when coupled with the delay in bringing this suit.
The first circumstance is disposed of by saying that there is no evidence of the lease. There is no charge in the bill respecting it, to which the answer is responsive. The answer in this respect is not therefore evidence, but merely pleading, and the defendants must support it by proof. The averments by the defendant David of the consideration on which the subsequent deed to himself was given, is subject to the same *Page 32 
remark. He admits that the land was conveyed to him partly as a gift, but he says it was partly for the price of five hundred dollars paid by him for his father. On this statement he claims to be a purchaser, and that under statute 27 Eliz., the deed of 1814 is void as to the lands conveyed to him. A colorable consideration will certainly not make a purchaser under the statute. Whether an inadequate one, known and understood to be so at the time, will suffice to convert a transaction meant mainly to be a gift into a purchase for any purpose, may also be at least doubted. But one who claims as a purchaser must at all events (30) prove that he paid the money, and does not establish it by his deed or by his own answer.
Then, as to the length of time as evidence of acquiescence, to give it that effect there must appear to have been a knowledge by the parties of their rights, and no incapacity to sue, nor any circumstance to account for the delay upon any other ground but the presumption of a satisfaction or renunciation of the right. The deed was canceled in 1816 or 1817, and the bill was filed in 1832, and during the greater part of the intervening sixteen years the plaintiffs were either femes covert or infants. It is not surprising that as they came of age they should not assert their title against their father, and especially during his unhappy and helpless state for several of the last years of his life. The time itself is not long enough to bar the plaintiffs, against whom can only be presumed a willingness that the father should enjoy during his life, and whose possession as their natural guardian they regarded as their own.
The lapse of time can have no other effect; for the statute of limitations is not pleaded, nor relied on in the answer. If it were, it could not, as urged in the argument, avail the defendants, David and Samuel, under the deeds to themselves, because there is no evidence of the length of their possession under those deeds.
The last point taken is, that the defendants, David and Samuel, are creditors of their father to a large amount. They state that they were his guardians during his lunacy, and administered upon his estate after his death, and in those capacities have made advances to creditors under the belief that the lands now in dispute were his and had descended. Upon this point also there is a total defect of proof. But if the fact had been established, it would not bar nor delay the relief of the plaintiffs. If those defendants be creditors, they cannot object to the relief for an indefinite period. They must be active in the assertion of their claim, by their own bill, to which the decree in this cause will be no obstacle. They cannot use the fact by way of defense here. Indeed, it appears there is other estate, and that may be sufficient without resorting to the settled lands, and is liable before them. The claim for those (31) debts arises upon an independent equity, and would not, we *Page 33 
suppose, be barred by this decree. But for greater safety, the defendants may insert in it a clause that it shall be without prejudice to them in that respect.
The execution and delivery of the deed of 1814 must be declared to be established, and that it vested the title of the lands in all the donees therein named, as mentioned in the bill. The decree will be that the widow be perpetually enjoined from proceeding at law for dower in any of those lands; that the defendant Mary A. E. Tate, upon coming of full age, release, under direction of the master, all the said lands to the donees in the deed of 1814 or their heirs, with liberty to her to show cause against the decree within six months after full age; that partition be made between the plaintiffs and the defendants of all the said lands included in the deed of 1814, according to their several shares under the same, and that in such partition the tract of land conveyed to Baker Woodward be allotted to the plaintiff Nancy H. Woodward as for or in part of her share, according to its actual valuation at the period of partition, and that a commission issue for that purpose. The decree will not direct conveyances for the present, as they can be more conveniently executed as mutual releases upon the return of the partition. There must also be an account of the rents and profits since the death of the donor, David Tate, deceased, received by any of the parties; and the annual value of the land conveyed to Woodward must, for the same period, be treated as profits received by Mrs. Woodward under her submission in the bill.
The infant heir, Mary A. E. Tate, must have her costs, to be paid by the plaintiffs and the defendants David and Samuel equally; and as between the other parties no costs are given.
PER CURIAM. Decree accordingly.
Cited: Littleton v. Littleton, 18 N.C. 329; Morrow v. Alexander,24 N.C. 392; Thomas v. Thomas, 32 N.C. 125; Gaskill v. King,34 N.C. 216; Crump v. Black, 41 N.C. 323; Tyson v. Harrington, id., 331;Phillips v. Houston, 50 N.C. 303; Robbins v. Roscoe, 120 N.C. 81.
Dist.: Barnes v. Roper, 90 N.C. 191. *Page 34 
(32)