Nash, J.
The bill charges that, in IS4?, Wealthy Always made and executed a deed, conveying to the plaintiffs four negroes, to be delivered to them at her death, in absolute estate: and she died in 1849. It further charges, that, after the death of the donor, the defendant Caroline, the wife of the defendant, Henry Lovick, by fraud and artifice obtained possession of the deed from the subscribing witness, Henry Marshal, and destroyed it by tearing it to pieces. The deed never was registered, and after its execution by the donor, remained in the possession of Marshal, the subscribing witness, until destroyed by the defendant, Caroline, who is the grand-daughter of the donor, and her next of kin. After the death of the donor, the defendant, Lovick, took possession of the negroes in question. The prayer oí the bill is for the delivery of the negroes and a conveyance by Lovick and wife.
The answers admit the writing and sealing by the deceased, oí the instrument stated in the bill, but deny that *90 she ever delivered it to the complainants, or to any one for them : and states, that she retained the power to withdraw it from Marshal, in whose custody it was merely left, at any time she pleased. And before her death she considered it of no effect, and in her will, made subsequent to the date of the paper, bequeathed the slaves to the defendant,Caroline.
Replication was taken to the answers.
William H. Marshal, the subscribing witness, proved the signing and sealing of the instrument, after which, lie states, “it was delivered to him, and she'requested it to be kept secret until her death; and, if Caroline, her granddaughter, should marry a man who was able to buy the ne-groes, mentioned in aforesaid deed, she wished the deponent to let him have them, and the proceeds arising from said sale to be secured to the complainants: the deed of gift she wished given up, in case he should pay, or cause to be paid, the worth of the negroes — the deed to be kept until the death of said Wealthy Always.” The witness further stated, that before the instrument was handed to him, W. Always said, “if ever she wanted it, she would call for it on the deponent;” and if she had so done, he would have delivered it up to her: and he was directed, “if the husband of Caroline refused to purchase the negroes, or Caroline was not married, to prove the paper.”
The only question arising on these pleadings is, as to the delivery of the instrument under which the plaintiffs claim the negroes in question, or, rather, claim the relief they seek, We are of opinion the instrument never was legally delivered, so as to make it a deed. What constitutes the delivery of a deed, has been frequently canvassed in this Court, and by many decisions it seems to be settled, that when a paper is signed and sealed, and handed to a third person, to be handed to another upon a condition which is afterwards complied with, the paper becomes a deed by the *91 act of parting with the possession, and takes effect presently, unless it clearly appears to be the intention, that it should not then become a deed. And the enquiry always is, whether the delivery to the third person, under all the circumstances, is a departing with the possession of the instrument, and of the power and control over it, or whether it was delivered merely for safe keeping, as a crcpository, and subject to the future control and disposition of the maker of the instrument. If the former, the delivery, as an escrow, is complete ; if the latter, it is not. In the case of Baldwin v Maultsby, 4 Ired. Rep. 505, the deed, after being signed and sealed by the donor, and attested by the witnesses, was left on the table, and was, after his death, found in his trunk, among his valuable papers. It was enclosed within an envelope, endorsed, “ Warren Baldwin to Charles Baldwin and others, — deed of gift,” And the donor several times stated he had made such a deed. The Court decided there was no delivery, because the donor had never parted with the possession. In Hall v Harris, 5 Ired. Eq. 307, his Honor Judge Pearson says, the question of delivery depends upon the fact “that a paper, signed and sealed, is put out of the'possession of the maker.” In Gaskill v King, 12 Ired. 216, the delivery of the deed was by the maker to his wife, with directions to take care of it for the donor, and to have it proved and recorded when .she pleased. The legal effect of the delivery of the deed was controverted, on the idea that the deed being in her possession, the donor, the husband, had a legal dominion over her, and might have compelled her to deliver it up ; in other words, that, being in her possession, it was in his possession, and under his control. The Chief Justice observes upon this argument: “he might, it is true, have forcibly compelled her to part with the paper, but he could not have done so rightfully, if he parted from the instrument as his *92 deed for one instant.” And it was decided that the delivery to the wife was a good delivery as a deed. 'The case of Doe and Cowons v Knight, 5 Barn and Cress. 671, is a leading case on this subject, and fully sustains the cases before referred to. The question then returns upon us, did Mrs. Ahvgys, when she delivered the instrument in question to the6 Witness, Marshall, deliver it to him simply as a depository, to keep it for her, and subject to her control, or did she deliver it to him for the plaintiffs, divested of any .future control on her part? The .witness, Marshall, we think, settles the question.
Before the instrument was signed and sealed by the donor, she said if she ever wanted it, she would call upon the witness for it, and directed him in the meantime to keep it secret. And in this the witness acquiesced, for he stated that if she had called for it he would have delivered it up to her. The first part of this evidence accompanied the alleged act of delivery, and is a part of it; and the latter is proof of the fact, that the witness considered himself a mere depositary, and the effect of the whole is to show, that both parties considered the instrument under the control of the donor. But again, the witness states, that the directions to him were, that if the husband of Caroline would pay for the negroes their value, he, the witness, was to let him have them and deliver up the deed of gift to him. This evidence is further explanatory of the intentions of the donor, in delivering the deed to the witness. She evidently meant to have the constant control over the instrument during her life, if the instrument took effect at the time of the delivery of it to Marshal, neither the donor nor the witness had power to sell or dispose of the slaves : they became, by delivery, the property of the plaintiffs. But she did not so intend ; but for the reason assigned by her, *93 reserved to herself the power of otherwise disposing of them, if she should think proper. This power all the cases cited hold to be inconsistent with the idea and principle of a delivery. Marshal, the witness, was the agent of the donor, to keep the instrument for her. His possession, therefore, was her possession, and the instrument could have been withdrawn from him at any moment she pleased. There was, therefore, no transmutation of its possession., without which there could be no delivery, either as an escrow or otherwise. The whole argument of the plaintiff’s counsel is founded upon the position that the instrument in this case was delivered as an escrow, and to that point his authorities are directed. For the reasons above given, we do not so consider the delivery here, but in legal parlance no delivery at all.
Fee CuRiam. The bill dismissed with costs.