## DESTY C. BUCHANAN v. W. C. CLARK ET AL.

(Filed 13 December, 1913.)

1. **Trial by Jury—Waiver—Consent—Findings by Judge—Trials—Evidence—Exceptions—Appeal and Error.**

The parties to an action may waive their right to a jury by agreeing that the trial judge may find the facts upon the issues involved and declare his conclusions of law arising thereon (Revisal, sec. 540), and where the judge has acted accordingly, the relevant and pertinent facts so found by him are conclusive on appeal when there is any sufficient legal evidence to support them. An exception to a finding of fact, on the ground that there was no evidence thereof, must be made in apt time before the judge.

2. **Deeds and Conveyances — Delivery to Another — Acceptance—Trials—Presumptions—Evidence.**

Where one purchases land and has the deed made to his illegitimate son, and himself receives and holds the conveyances for the son, it is in fact a delivery of the deed in such manner as to vest the title of the lands in his son; and where this is done without the knowledge of the son, the presumption is that he will accept the deed made for his benefit, and this presumption will prevail in the absence of evidence to the contrary.

3. **Deeds and Conveyances—Test of Delivery—Trials—Evidence.**

Where the fact of the delivery of a deed to lands is in question, the test is, whether the grantor in parting with its possession thereby lost control of it, and the power of recalling it.

**4. Same—Undisclosed Intent—Reconveyance.**

Where a father purchases lands and has a conveyance thereof made to his illegitimate son, saying at the time it was to make provision for him, but without the knowledge of the son, who dies before his majority, a second conveyance from the same grantor obtained afterwards by the father and made to him as grantee cannot divest the title conveyed to the son in the first deed, whatever his undisclosed intent may have been at that time.

**5. Deeds and Conveyances—Registration—Purchaser Not for Value —Actual Notice.**

The provision of Revisal, sec. 980, was intended to protect a purchaser of land for value from the claim of a grantee under an unrecorded deed, and has no application where a deed has been delivered which conveys the title to a son of the purchaser, and subsequently the purchaser obtains a conveyance thereof to himself from the same grantor without any consideration, for then, the grantor having parted with his title, the second deed is made without value, which is sufficient to avoid it.

CLARK, C. J., dissenting. HOKE, J., did not sit.

APPEAL by defendant Clark from *Lyon, J.,* at October Term, 1912, of AVERY.

This is an action for the recovery of land, and its decision turns upon the question whether a deed, or instrument in the form of a deed and sufficient to convey presently a fee-simple title in the land, to Raymond Buchanan by C. F. and R. E. Franklin had been delivered. A second deed was executed by the Franklins to the defendant W. C. Clark, at his request, for the same land. Plaintiff, who is the sole heir at law of Raymond Buchanan, he having died some time between the dates of the two deeds, contends that the first paper was duly delivered to defendant W. C. Clark, by the Franklins, the grantors, for Raymond Buchanan, and that Clark agreed to receive and did receive it for that purpose, and that the title, thereby, immediately passed to Buchanan, while Clark denies that there was such a delivery, and avers that he acquired the title. The parties agreed to waive a jury trial, and that the judge should find the facts and state his conclusions of law thereon, and that judgment should be entered accordingly. The facts were found

by the judge, in accordance with the agreement of the parties, and it is sufficient to state that there was ample evidence, without setting it out, to support the said findings, which are as follows:

1. That Raymond Buchanan was an illegitimate son of the plaintiff.

2. That the defendant W. C. Clark was the father of said Raymond Buchanan.

3. That the said Raymond Buchanan died intestate on 15 May, 1911, leaving the plaintiff his sole heir at law.

4. That on 16 March, 1910, the defendants W. C. Clark and C. F. Franklin and R. E. Franklin made an exchange of land, and in consideration of the conveyance of certain land to the defendants C. F. Franklin and R. E. Franklin, they, at the request of the said W. C. Clark, executed a deed in fee simple to said Raymond Buchanan for the lands in controversy, which deed was duly acknowledged by the said defendants Franklin, before T. M. Vance, a justice of the peace, who took the acknowledgment of the said C. F. Franklin and wife, R. E. Franklin, and her privy examination, the said deed being in proper form and signed and sealed by both the Franklins before said acknowledgment.

5. That after the due execution of the deed by the Franklins, and the probate of the same by the justice of the peace, it was delivered to the defendant W. C. Clark, for Raymond Buchanan, who was then in the State of Kentucky. .

6. That Raymond Buchanan died before he was 21 years of age.

7. That on 21 November, 1911, after the death of Raymond Buchanan, and after defendants knew of his death, the Franklins, at the request of defendant W. C. Clark, executed a second deed for the property, and delivered the same to the defendant W. C. Clark, and in this second deed W. C. Clark was named as grantee.

8. That during the month of April, 1912, W. C. Clark handed the first deed in which Raymond Buchanan was named as grantee, to defendant C. F. Franklin.

9. That thereafter, upon demand of plaintiff's attorney, the defendant C. F. Franklin delivered said deed to the plaintiff, and the same was registered in Avery County.

10. That at the time of the execution of the second deed above mentioned the defendant W. C. Clark executed and delivered to the defendant C. F. Franklin a paper-writing as follows:

STATE OF NORTH CAROLINA—AVERY COUNTY.

This is to certify that I hereby bind myself, my heirs and executors, to pay to C. F. Franklin and wife any damages that may lawfully be awarded against them for making second deed for a piece of land, being a tract of land that said W. C. Clark intended to give to Raymond Buchanan.

Witness my hand and seal, this 21st day of November, 1911.

His
W. C. ✕ CLARK.    [SEAL]
mark.

11. That the defendant Clark caused the said second deed to be registered before the registration of the first deed above mentioned.

12. That there was no consideration for the execution and delivery of the second deed.

13. That at the time of the execution of the first deed the grantors therein and the said W. C. Clark intended that the land in controversy should belong to Raymond Buchanan in fee simple.

14. That the rents and profits derived from the land in controversy since the death of Raymond Buchanan are $25.

15. That the defendant W. C. Clark withholds the land in controversy from the plaintiff, and has been in possession of the same, withholding the same from the plaintiff, since the death of Raymond Buchanan on 15 May, 1911.

The court thereupon adjudged, upon the facts so found, that plaintiff is the owner of the land and entitled to the possession thereof; that defendants have no interest therein, and that the second deed of the Franklins to W. C. Clark be delivered up and

canceled, and that the clerk of the court also cancel the same on the registry thereof, and also gave judgment against defendant for the costs. The defendant W. C. Clark excepted and assigned errors as follows:

1. To the failure and omission of the court to find that it was the intention of W. C. Clark to deliver the deed to Raymond at the time of the death of the said Clark.

2. To the failure and omission of the court to find that it was the purpose and intention of W. C. Clark to make some provision for Raymond Buchanan so as to make him equal with his other children, and that this purpose was defeated by the death of the said Buchanan before the time at which the said Clark intended to deliver the deed.

3. To the judgment, upon the ground that, on the facts found, it should have been rendered in favor of the defendant W. C. Clark.

*Harrison Baird, L. D. Love, and Edmund Jones for plaintiff.*
*S. J. Ervin, W. C. Newland, and Lawrence Wakefield for defendant.*

WALKER, J., after stating the case: We are of opinion that the defendants in this case are completely foreclosed by the judge's findings of fact. Parties can have their causes tried by jury, by reference, or by the court. They may waive the right of trial by jury by consenting that the judge may try the case without a jury, in which event he finds the facts and declares the law arising thereon. Revisal, sec. 540. His findings of fact are conclusive, unless proper exception is made in apt time that there is no evidence to support his findings or any one or more of them. The present *Chief Justice,* in *Matthews v. Fry,* 143 N. C., 384, thus states the procedure in such cases: "The parties waived a jury trial and agreed in writing that the judge should find the facts and enter judgment thereon as upon the facts so found he might decide the law to be. The judge found the facts and entered judgment thereon in favor of the defendant. When the certificate of opinion was presented in the court below, the plaintiff moved for judgment in accordance there-

with. The defendant resisted this judgment and asked for trial *de novo,* and insisted that some of the findings of fact had been made by the judge without any evidence to support them. The findings of fact by the .judge, when authorized by law or the consent of parties, are as conclusive as when found by a jury, if there is any evidence," citing *Branton v. O'Briant,* 93 N. C., 103; *Roberts v. Insurance Co.,* 118 N. C., 435; *Walnut v. Wade,* 103 U. S., 688. The findings have the force and effect of a verdict. This is also the rule in other jurisdictions. *Griffith v. Manufacturing Co.,* 115 Ga., 592. The point was expressly decided, with reference to the delivery of a deed, in *Avent, v. Arrington,* 105 N. C., 377, where it was held that the finding as to delivery, supported by some evidence, was not reviewable here. This question is important, for a bare reference to the judgment will show at once that the judge has found that, in fact, there was a delivery of the deed by the Franklins to W. C. Clark for Raymond Buchanan. The following two findings, aside from others of equal force, may be selected as conclusive upon this question:

"1. That after the due execution of the said deed by the defendants Franklin, and the probate of the same by the said justice of the peace, the said deed was delivered to the said defendant W. C. Clark, for said Raymond Buchanan, who was then in the State of Kentucky.

"2. That at the time of the execution of the first deed, the grantors therein and the said W. C. Clark intended that the land in controversy should belong to Raymond Buchanan in fee simple."

Conceding, for the sake of discussion, that the defendant W. C. Clark has distinctly excepted, upon the ground that there is no evidence to sustain this finding, which may be questionable, we yet think that the evidence is sufficient for the purpose. The deed was prepared on 16 March, 1910; actually delivered to defendant W. C. Clark on the same day, for Raymond Buchanan, his son, after having been duly probated, and was registered 8 May, 1912. C. F. Franklin testified that he delivered the deed to W. C. Clark, who had said that he "wanted the land

deeded to Raymond." Mrs. Franklin testified that "W. C. Clark had them to make the deed to Raymond, so his other children could not knock him out of it," and further, that W. C. Clark took the deed, said nothing about delivery, but that he wanted Raymond to have it. The second deed was executed by the Franklins to W. C. Clark after the death of Raymond Buchanan, and on 21 November, 1911, and there was no consideration for it. The Franklins told Clark they did not want to make the second deed, as it was illegal, they having already made one to Raymond Buchanan, and Clark gave them the paper-writing, agreeing thereby to indemnify them against damages for making the second deed. All this, of itself, was evidence sufficient to support the findings, without any reference to other testimony in the case. There could not well be a "second" deed unless there had been a "first" one. The Franklins simply signed the paper, acknowledged it as their act and deed before the justice, and delivered it to W. C. Clark, who accepted it with the distinct understanding between them that he held it for his natural son, Raymond Buchanan. This was all done at the time. He so held it for a year and eight months or more, and then the second deed was made.

After the first deed had vested the fee-simple estate absolutely in Raymond Buchanan, nothing that the parties did afterwards, without his consent, could divest it. It makes no difference what the undisclosed or unexpressed intention of W. C. Clark was; having received the deed for his son, he is bound by his act, and the title then passed from the grantors, the Franklins, to Raymond Buchanan. The deed had passed out of the possession of the Franklins and they had lost control of it and all power of recall, and they so regarded the transactions. This is the supreme test of a delivery. In *Phillips v. Houston*, 50 N. C., 302, *Judge Battle* clearly stated the rule: "The delivery of a deed 'depends upon the fact that a paper, signed and sealed, is put out of the possession of the maker.' That, we think, is the true test, and if it appears that the grantor, or donor, has parted with the possession of the instrument to the grantee or donee, or to any other person for him, the delivery is com-

BUCHANAN *v.* CLARK.

plete, and the title of the property granted or given thereby passes. But it will be otherwise if the grantor or donor retain any control over the deed; as if he, when he hands it to a third person, request him to keep it and deliver it to the person for whom it is intended, unless he shall call for it again. These principles will be found to govern all the cases, beginning with *Tate v. Tate,* 21 N. C., 22, running through *Baldwin v. Maultsby,* 27 N. C., 505; *Snider v. Lackenour,* 37 N. C., 360; *Ellington v. Currie,* 40 N. C., 21; *Roe v. Lovick,* 43 N. C., 88; *Gaskill v. King,* 34 N. C., 211; and *Newlin v. Osborne,* 49 N. C., 157, and down to *Airey v. Holmes, ante,* 142. Tried by the above mentioned test, the delivery of the deed, in the present case, must be declared to be complete. The donor handed the paper, signed and sealed, to a third person, for the use of the donee, without any reservation whatever, and when it was returned to her she immediately handed it to another person, for the donee, without the slightest intimation that she was to have any control over it. The delivery, however, was perfect when the instrument was handed to the first person, and it made no difference whether it was registered before or after the donor's death." This case, at a long interval, but after being thoroughly approved as laying down the correct doctrine, was followed by *Robbins v. Rascoe,* 120 N. C., 79, and *Fortune v. Hunt,* 149 N. C., 358, in which *Justice Brown* reiterated the principle as follows: "When the maker of a deed delivers it to some third party for the grantee, parting with the possession of it, without any condition or any direction as to how he shall hold it for him, and without in some way reserving the right to repossess it, the delivery is complete and the title passes at once, although the grantee may be ignorant of the facts, and no subsequent act of the grantor or any one else can defeat the effect of such delivery," citing *Phillips v. Houston, supra,* and *Robbins v. Rascoe, supra.* See *Tate v. Tate,* 21 N. C., 26; *Hall v. Harris,* 40 N. C., 303. "A deed is good if delivered to a stranger to the use of the grantee, and at the time it was thus delivered." *Threadgill v. Jennings,* 14 N. C., 384. It appeared in *Tate v. Tate,* 21 N. C., 26, that David Tate executed a deed of bargain

and sale conveying land to his infant children, and delivered
the deed to their uncle, Hugh Tate, in whose possession it re-
mained until his death, when the bargainor went to the widow
of Hugh Tate and obtained the deed before it was registered
and canceled it by tearing off his signature and that of the wit-
ness, and he, David Tate, conveyed the same property to another.
The delivery of the deed was upheld, the Court saying: "Where
the maker of a deed parts from the possession of it to anybody,
there is a presumption that it was delivered as a deed for the
benefit of the grantee, and it is for the maker to show that it
was on condition, as an escrow. Such a delivery to a third per-
son is good, and the deed presently operates, and infants may
assent to such a deed to themselves, and their assent is pre-
sumed until the contrary appears," citing several English cases.
*Judge Henderson* said in *Kirk v. Turner*, 16 N. C., 14: "A de-
livery of a deed is in fact its tradition from the maker to the
person to whom it is made, or to some person for his use; for
his acceptance is presumed until the contrary is shown. It be-
ing for his interest, the presumption is, not that he *will accept,*
but that he *does.*" The facts in *Morrow v. Alexander* were that
a father, residing in South Carolina, signed and sealed a deed
to his daughter, residing in North Carolina, and delivered it in
South Carolina to his son, to be given to his daughter; held by
this Court that the delivery to his son was complete, and the
title passed, citing *Gaskill v. King,* 34 N. C., 211, which cites
and sustains *Tate v. Tate, supra. McLean v. Nelson,* 46 N. C.,
396, is also in point, and is to this effect: "When one delivers
a deed to a third person in the absence of the grantee, the latter
is presumed to accept it, so that it forthwith becomes a deed,
and the legal effect is to pass the property. This presumption
may, of course, be rebutted by proving that the party refused
to accept it; but until he refuses, his assent is presumed for the
purpose of giving effect to the instrument as a deed. *Ut res
magis valeat quam pereat.*" In the last case, *Judge Pearson*
rests the presumption of an acceptance by the grantee, not only
upon the benefit conferred by the deed and the further presump-
tion that a man will take advantage of that which advances his

own interests, but says that the reason lays deeper, and that it also rests upon the maxim *ut res magis valeat quam pereat.* The presumption of assent on the part of the grantee remains until there is a dissent by him or his heirs, and is sufficient to vest the title.

The plaintiff, who is his heir, expressly assents to the conveyance, and, therefore, holds an irrevocable title to the land conveyed by the deed. No one, it is true, can be forced to take a title against his will, but the right of dissent prevents this from being done. It is the delivery to the third person for the grantee that passes the title, upon his presumed assent; the deed, though, is put beyond the control of the grantor, and his power of recall is forever gone, because, as to him, it has been delivered. This is the principle established in the earliest period of this Court, and it has been followed ever since. It was illustrated practically in *Phillips v. Houston,* 50 N. C., 302, where it was shown that the donor signed and sealed the deed and delivered it to Holland, the witness, and requested him to take it to the courthouse and have it recorded, which was not done until after the donor's death; it was held that the delivery to the first person (Holland) was perfect, and it made no difference whether it was registered before or after the donor's death, the Court saying: "In the case of *Hall v. Harris,* 40 N. C., 303, it was said by the Court that the delivery of a deed depends upon the fact that a paper signed and sealed is put out of the possession of the maker. That, we think, is the true test, and if it appears that the grantor or donor has parted with the possession of the instrument to the grantee or donee, or to any other person for him, the delivery is complete, and the title of the property granted or given thereby passes. But it will be otherwise if the grantor or donor retains any control over the deed; as if he, when he hands it to a third person, requests him to keep it and deliver it to the person for whom it is intended, *unless* he shall call for it again. These principles will be found to govern all the cases, beginning with *Tate v. Tate,* 21 N. C., 22, and then a large number of North Carolina cases are cited." To those may be added two of recent date in this Court, *Helms v. Austin,*

116 N. C., 751, and *Frank v. Heiner,* 117 N. C., 79; and also *Adams v. Adams,* 21 Wall. (U. S.), 185; *Hedge v. Drew,* 12 Pick. (Mass.), 141. The Franklins, when they delivered the deed to W. C. Clark, said absolutely nothing indicating that they intended to reserve the least control over the deed. They parted with it unconditionally and the title at once passed to the grantee. Nothing that was done afterwards by them alone would destroy its efficacy as a deed, or even impair it.

It is unquestionable, too, that probate and registration of a deed furnish presumptive proof of its delivery, and were, therefore, additional evidence to sustain the finding of the fact. *Fortune v. Hunt, supra.* They were more than this, being *prima facie* evidence of the delivery, and sufficient in themselves and even as against opposing proof, to support the finding as to the fact of delivery, it being for the judge, acting like a jury would, to weigh the evidence and decide upon its preponderance. If there was any evidence, as we have shown, the finding cannot be disturbed.

The supplemental finding as to the intention of W. C. Clark that his son should have the land, as his part of the estate, so that he could share with the other children, tends to strengthen the views already stated. The death of his son so soon was an event he may not have contemplated, but it was accidental, and did not alter the fact of the delivery, or tend to disprove it, but rather the contrary.

The act of 1885, ch. 147 (Revisal, sec. 980), has no application, as defendant is admittedly not a purchaser for value, and the judge so finds, and the circumstances of the case would exclude him from its benefits. *Austin v. Staten,* 126 N. C., 783.

Of course, the decision of this case must rest upon a correct understanding and statement of the facts as found by the court. The salient facts are these:

1. That after the due execution of the deed by the Franklins to Raymond Buchanan, and the probate of the same by the justice of the peace, it was delivered unconditionally to the defendant W. C. Clark, for Raymond Buchanan, who was then in the State of Kentucky. This is the judge's sixth finding of fact.

2. The deed of the Franklins to Raymond Buchanan was executed and delivered by them to W. C. Clark for him 16 March, 1910, and the subsequent deed of the Franklins to W. C. Clark, which they told Clark they did not have the right to make, was executed on 21 November, 1911, or one year and eight months after the delivery of the other deed, and not even anything said between them about it during this long interval of time.

3. W. C. Clark, on that day (21 November, 1911) when he insisted on the execution of the deed to him by the Franklins and gave them the writing admitting the execution of the prior deed, had full actual notice of the latter deed. This is admitted. This, of course, is not notice under the Connor Act, but he was not a purchaser for value, as the judge expressly finds, having paid nothing for the deed. This was also admitted on the argument. To hold that he is protected by that statute would violate its very principle, and would enable him to perpetrate a fraud upon his son, for whom he voluntarily held the other deed.

4. It is perfectly clear that the Franklins parted with the possession of the deed with intent to pass the title to Raymond Buchanan and put the same beyond their control or recall. They so say, and the judge so finds. They could not have recovered the deed or the land by action. The title, therefore, passed out of them, and there is no one in whom it could have vested except Raymond Buchanan, as there was no intention in the minds of the parties to vest it in any one else. W. C. Clark so understood it, as he said: "I gave the deed to my wife to hold; I was acting for this boy, though he did not know it, and I was not his agent." But this is evidence, and we must abide by the facts as found by the judge, which plainly fix him with the intention to accept the deed, not for himself, nor for any one else, but his son alone. No subsequent change of mind can affect the result.

5. The additional finding of the court, under the *certiorari*, goes no further than to show an undisclosed or unexpressed intention of W. C. Clark to do something which he did not do at the proper time, and is based altogether upon evidence as to

what he afterwards, and long afterwards, said about it, and after his son had died. He could not thus recall a delivery already completely made, and if we should so hold, no man's deed would be safe from attack, and every title in this State would be in constant jeopardy, depending not upon what a grantor may have done, but upon his uncommunicated intentions or the thoughts hidden in the inner recesses of his mind, even if he had them. It will place every grantee at the mercy of his grantor.

No error is disclosed in the record.

No error.

HOKE, J., not sitting.

CLARK, C. J., dissenting: It is elementary that *delivery* is essential to a deed. In my opinion, there is no evidence whatever of a delivery in this case; on the contrary, the facts show conclusively that there was no attempted delivery, and no present intention shown to deliver. The evidence shows an intention not to deliver till an event which has not yet happened, *i. e.,* Clark's own death.

The facts, briefly stated, are that Clark exchanged lands with the defendant Franklin and his wife. Clark executed his deed to Franklin and in exchange Franklin was to convey another tract to him. But at Clark's request, Franklin inserted in the deed the name of Raymond Buchanan, the illegitimate son of Clark. There was no delivery to Buchanan, no consideration paid by him, and no agreement by Clark to hold for him. Buchanan was a stranger to the transaction, and there was nothing to make Clark a trustee for him. Clark, in effect, remained the true owner of the land, and retained the same control over it and over the deed as he had had over the land which he conveyed to Franklin in exchange. He had an intention, he testifies, to deliver the deed to Buchanan at his own death; but it was an intention founded on no consideration and based upon no agreement with Franklin or Buchanan, and such intention remained unexecuted. Buchanan never saw the deed, so far as the evidence shows; had no agreement about it, and

was not even aware of its existence. He was at the time in a distant State, and died before becoming 21 years of age and without having returned to North Carolina.

· On Raymond's death, Clark changed his mind, handed the deed back to Franklin and wife, and obtained a new deed for himself. At Franklin's request, he gave him an agreement to pay any damages which might accrue to him by reason of giving Clark a second deed to the land which he had *"intended* to give· to Raymond Buchanan." This is so expressed in the contract, and shows that he had not given the land to Raymond. His statement to Franklin when he received the deed, that he intended to have the deed delivered to Buchanan at his own death, shows that he was to retain control over it. The case, therefore, comes squarely under the decision in *Weaver v. Weaver,* 159 N. C., 18.

After Raymond's death, upon the demand of the plaintiff's lawyer, Franklin surrendered the deed, which Clark had returned to him, to the plaintiff, who had it recorded, but subsequent to the registration of the deed to Clark. The deed never having been delivered to Buchanan, this forcible obtaining it after its return to Franklin and its registration thereafter could have no effect. The privy examination of Franklin's wife and acknowledgment of her husband to the first deed could have no validity, in view of the fact that there had been no delivery to Buchanan. The deed was based upon no consideration moving from Buchanan. It remained in the control and possession of Clark, who did not agree to hold it for Buchanan, but merely expressed an intention to give it to him at his own death. Buchanan could not have maintained an action against Clark to convert him into a trustee nor to compel him to deliver the deed.

Clark retained control over the deed and of the land. He has parted with neither the title nor the possession of the land, and retained the right to cancel the deed at will. He could have maintained, upon tender of the return of the deed to Franklin and wife, an action to compel Franklin and wife to execute their contract and to deliver to him a deed for the land

in exchange for the land he had conveyed to them. He could not, "unbeknownst" to both himself and Buchanan, pass the title to Buchanan and deprive himself of his own property, when he has received no consideration therefor and had not expressed even an intention to do so, except an intention, without any consideration from Buchanan, to deliver the deed to him at his own death. He has done nothing to deprive himself of his own property, merely because he had an unexecuted intention, on a future event which has not occurred, to pass the title to Buchanan, who died before the event occurred.

The whole matter remained *in fieri,* and Clark possessed the right to cancel his intended gift of the property to Buchanan and to take the title to himself, which he has done. Until delivery to Buchanan, the paper-writing, though signed and acknowledged by Franklin and wife, was not a deed, and had no more effect than if it had been a blank piece of paper. It is different when such paper is delivered to the grantee named therein.

In obedience to the writ of *certiorari* from this Court, the judge made the following additional finding of fact: "That the defendant W. C. Clark purchased and paid for the land on his own initiative, without the knowledge of Raymond Buchanan, intending at the time to deliver the deed to the said Raymond Buchanan on his return to the State, so that the said Raymond Buchanan, who was illegitimate, should share with his other children in his estate; and the said Raymond having died before his return to the State, the said W. C. Clark surrendered the deed to the grantors and procured the other deed to himself." It is thus found as a fact by the court, by consent of the parties, that the deed was never delivered to Buchanan; that Clark received it, not as his agent, but as a purchaser for value, and held it subject to his own control of it, and with the intention to deliver it to Buchanan on a contingency which did not happen, and that he was not under any compulsion to have delivered it at all.

Besides, under Revisal, 980, Clark being a purchaser for a valuable consideration, and his deed registered first, the con-

veyance to Buchanan, even if it had been delivered and even if it had been registered by authority, was not valid against him. It is true, Clark had notice of the prior deed. But it has been held in cases too numerous to be cited that "no notice, however full and formal, can supply notice by registration, and a purchaser for value under a prior registered deed is not affected by notice of an unregistered deed, even if the holders thereunder are in possession of the property." In this case Clark remained in possession, and Buchanan had possession neither of the deed nor of the land. *Tremaine v. Williams,* 144 N. C., 114; *Collins v. Davis,* 132 N. C., 106; *Blalock v. Strain,* 122 N. C., 283; *Patterson v. Mills,* 121 N. C., 267, and cases cited; *Hinton v. Leigh,* 102 N. C., 28; *Blevins v. Barker,* 75 N. C., 436.