## BOND v. WILSON.

### (Filed December 17, 1901.)

1. EVIDENCE—*Relevancy—Competency.*

   Evidence of a fact which is neither raised by the pleadings nor by the issues submitted, is irrelevant and therefore incompetent.

2. DEEDS—*Delivery—Escrow—Agency.*

   Where a deed is given to an agent for the principal, without right by grantor to recall it, it amounts to a delivery.

3. ABANDONMENT—*Deeds.*

   Where a purchaser fails for 17 years to take possession of land under an unregistered deed, it does not amount to abandonment.

4. VENDOR AND PURCHASER — *Betterments — Improvements — Ejectment.*

   Where a vendee is induced to take possession of land by the owner under a promise that he may reasonably rely upon that he will have the benefit of the improvements, he is entitled to pay for betterments and taxes paid by him.

5. VENDOR AND PURCHASER—*Betterments—Rents—Ejectment.*

   Where a vendee, in ejectment, claims pay for betterments, he must account for rents.

6. EJECTMENT—*Ouster—Betterments—Writ of Assistance.*

   In ejectment a writ of ouster should not issue until a judgment for betterments is paid.

CLARK, J., did not sit.

ACTION by Louise N. Bond against J. W. Wilson and J. W. Wilson, Jr., heard by Judge *E. W. Timberlake* and a jury, at Spring Term, 1901, of the Superior Court of BURKE County. From a judgment for the plaintiff, the defendants appealed.

*Avery & Avery, Justice & Pless,* and *J. T. Perkins,* for the plaintiff.

*Osborne, Maxwell & Keerans, T. N. Hill, Avery & Ervin,* and *Bynum & Bynum,* for the defendants.

FURCHES, C. J. In January 1875, the defendant Wilson made and executed his deed to the plaintiff for the land mentioned in the pleadings. This purchase was made by H. F. Bond, the father of the plaintiff, acting as her agent. H. F. Bond died in 1881, and the deed was not registered until 1896. At the time the deed was made, the plaintiff, her father, H. F. Bond, and other members of his family, were living in Morganton, and it appears that this property (a vacant lot) was bought to build a residence upon. But after buying the lot the family moved to Georgia, without improving the lot, and on the 9th of September, 1880, H. F. Bond wrote the defendant the following letter: "Gainesville, Ga., 9th September, 1880. My Dear Sir:—Yours enclosing check for two hundred dollars was received several days ago (29th ultimo). Will place to credit. I write you in regard to the lot near you; when you let me have it, you did so thinking I wanted to build on it and become your neighbor, a kindness which I appreciate; but the last winter I spent in Burke convinced me that the winters are too cold for my family. Louisa had cold constantly, and Rebecca took such a deep cold that she did not recover from it for two or three months after our arrival in Atlanta; was under a physician then, and we were very uneasy about her. Lou's colds rarely come.

now, nor has Rebecca been troubled with them either. If we could stand the climate, would return. Besides, Mrs. Hollman had cough there, too, from which she has almost entirely recovered out here. We are very much attached to the people of M***, and can say truthfully that we have met no such in Atlanta, Ga. Under the circumstances, therefore, I can not consent to go back—health being first considered in locating, find I must ask you to do me the favor to take the lot back. Of course I lose money by the operation, having lost interest on investment for several years. If you will do me this favor, will try to be as indulgent on the notes as I can. You can let me have the money by 1st January ($600), and I shall not want probably more than $1,000, and may not want that—in the spring. My operations in Burke proved very unfavorable, but I hope the land in C*** may bring me out some day. With kindest regards to yourself and family, etc. (Signed) H. F. Bond."

Upon the receipt of this letter, the defendant took possession of the lot, treated it as his own, returned it for taxes and paid the taxes thereon, and put buildings and other valuable improvements on the same to the value of $300, and paid taxes to the amount of $130. Not long after H. F. Bond died the plaintiff moved back to Morganton to live, and had full knowledge of the fact that the defendant was in possession of said lot, improving the same, and treating it in every respect as his own property.

After the death of H. F. Bond, S. McD. Tate became his administrator, and the papers in the hands of H. F. Bond as agent of plaintiff, went into his possession, and it seems that he undertook to act as plaintiff's agent, and caused the deed to this lot to be registered.

This action was commenced on the 18th of March, 1897, for possession and damages for wrongful detention by the defendant. The defendant, by his answer and amended answer,

admits the execution of the deed, but denies the plaintiff's
right to the possession of the lot; and also alleges that if the
plaintiff should be entitled to the possession, that he is enti-
tled to pay for the valuable improvements he has put on the ·
lot, and for the taxes he has paid.   Both of these were de-
nied by the plaintiff's replication, and the following issues
were submitted to the jury:

"1. Is plaintiff the owner of the land described in the com-
plaint ?   'Yes.'

"2. Are defendants unlawfully in possession of said land ?
·Yes.'

"3. What is the annual rental value of said land ? '$18.50.'

"4. What, if any, is the value of the improvements put
upon said land by the defendant J. W. Wilson since the al-
leged abandonment by plaintiff on the 9th day of September,
1880 ?   '$300.'

"5. What amount of taxes, if any, has the defendant J. W.
Wilson paid on said land since September, 1880 ?   '$130.' "

It was claimed by the defendant Wilson that H. F. Bond
was the agent of the plaintiff in loaning her money and in in-
vesting the same for her in lands and in various ways; that
as such agent he loaned the defendant large sums of money;
that he invested large sums in buying grants to timber lands
in Caldwell County, and running and operating a saw-mill
thereon, besides buying the lot in controversy; that he was
her general agent for the purpose of loaning and investing
her money.   And upon these allegations he alleged that there
was an understanding between him and the agent H. F. Bond
that if they did not decide to build on the lot they need not
keep it, and if they did, H. F. Bond was to give him credit
for $600 on one of the notes he held as agent of the plaintiff
against the defendant, and that he is entitled to show this, and
have the benefit of the same; that he supposed the credit had
been entered when he received the letter of September 9,

1880, from H. F. Bond, but he has since found out that no such credit had ever been entered.    He contends that he has shown by the evidence of W. C. Newland, H. A. Howard and J. D. McCall that the plaintiff admitted (testified as a witness in the case of *Sprague v. Bond*) that her father, H. F. Bond, was her general agent in loaning and investing her money; that having shown this, she is bound by the acts and contracts of her father in making the purchase of this lot; that she can not take this deed and claim its benefits without being liable to the terms and conditions upon which it was made.

And upon these allegations, which the defendant alleges he has shown, the deed failed for want of consideration; that plaintiff left the State without improving the property, and abandoned it, as the deed, until registered, was only an equitable title, and might be and was abandoned; that the deed was not delivered to the plaintiff, but was delivered to H. F. Bond, as an escrow, and not being delivered to the plaintiff or registered until after the letter of H. F. Bond to him of September 9, 1880, it could not be delivered or registered after that time.    He claims that in consideration of these facts, the plaintiff is estopped to prosecute this action.

The defendant's counsel proposed to ask the defendant what was the price Bond agreed to pay him for the lot, and whether he had ever received payment.    This question was objected to, objection sustained, and defendant excepted.

The defendant has introduced very strong evidence tending to show that H. F. Bond was the general agent of the plaintiff in loaning and investing her money, and that he was undoubtedly her agent in the purchase of the lot in controversy—sufficient, we think, to make his declarations and acts concerning it competent testimony.    And the question asked, as stated above, might have been competent if it had been relevant.    But it is neither raised by the pleadings nor

by the issues submitted to the jury, and therefore is incompetent. The defendant's exception to the refusal to admit other evidence can not be sustained.

The delivery of the deed to H. F. Bond was a delivery in law to the plaintiff. If it had been upon the terms the defendant contends it was, still it was a delivery. They were all left to the plaintiff or her agent, and none of them were conditions precedent, or that the defendant had control of. He had no right to recall the deed after it was delivered to H. F. Bond, which we understand to be the test of delivery. *Robbins v. Roscoe,* 120 N. C., 79. It was not a delivery in escrow, as a delivery to H. F. Bond, the recognized agent of the plaintiff, was in law a delivery to her. And the general rule is that a deed can not be delivered in escrow to the grantee, and we see nothing to take this case out of the general rule. 11 Am. and Eng. Enc., 336. It could not be void for want of consideration, as the seal implies that there was a consideration. A consideration is expressed in the deed, and we do not understand the defendant to contend but what the consideration stated in the deed is the price agreed upon by the parties—in fact, he insists that $600 was the price agreed upon, to be paid in a certain way, which he says has not been done. And if this be so, that it has not been paid, that does not affect the validity of the deed. The only way that fact (if it be a fact) could have been material in this action would have been in the way of counter-claim; if it had been properly raised by the pleadings and issues, it might have then affected the measure of defendant's recovery, and not the title to the lot.

Neither do we think the doctrine of abandonment applies in this case. An unregistered deed is more than a mere equitable estate in the land conveyed. It is an inchoate legal title, as well as equitable, and becomes a complete legal title upon registration. *Austin v. King,* 91 N. C., 286. So this

deed conveyted the absolute title when it was registered, and related back to the date of its execution.

But H. F. Bond having been shown to be the agent of the plaintiff generally, and especially so in the purchase and management of the land in controversy—writing to the defendant and saying, "I must ask you to do me the favor to take the lot back. * * * You can let me have the money by the 1st of January ($600), and I shall not want probably more than $1,000, and may not want that—in the spring"; and the fact that the defendant at once went into possession and soon thereafter commenced erecting a house upon the lot, and putting other valuable improvements on the same, with the perfect knowledge of the plaintiff, and was allowed to continue in the possession of the land without objection or molestation for seventeen years, is sufficient to raise an equity in his favor for betterments. To our minds, the letter of the 9th of September, 1880, was a proposition to resell the lot to the defendant at the price of $600; and although there is no direct evidence that the defendant accepted this offer, we think the fact that he at once took possession of the lot and commenced to put permanent improvements on it, is evidence that he did. And the fact that he was allowed to do this, and to retain the undisputed control of the lot as his own for so long a time, is evidence going to show that the plaintiff so understood it. The right to betterments is not a matter of contract, but an equity growing out of the relation of the parties to prevent fraud and injustice, and to prevent one party from wrongfully enjoying the fruits of another's labor without paying for them. Of course this rule does not and should not obtain when a volunteer—a trespasser—has improved the land of another; that would be his own folly. But where a party has been induced to do so by the owner, under a promise he may reasonably rely upon, that he will have the benefit of the improvements, and not

the party inducing him to make them, he should be allowed to pay for such improvements—not what it cost to put them on the land, but the amount they had improved the land. We are, therefore, of the opinion that the defendant in this case is entitled to pay for his improvements, betterments. *Luton v. Badham,* 127 N. C., 96.

The question, then, arises as to whether he is entitled to be repaid the taxes he has paid on the lot since he took possession of it in September, 1880. If he had paid the plaintiff that much money on the land, under this agreement to reconvey, and she then refused to convey, the defendant would have been entitled to recover it back; as the land was the plaintiff's, the taxes were hers. And their payment by the defendant was the payment of her debt, not officiously, but under the belief that it was his duty to do so. We therefore see no reason why he should not be allowed to recover the amount of taxes he has paid. They were paid under the same assurance he had in the letter of the 9th of September, 1880, that the plaintiff would reconvey the land to him. And it seems to us that if he is entitled to the one, he is entitled to the other.

As the defendant claims betterments, he must account for rent at $18.50 a year, from September, 1880, until his ouster, as he is still in possession, and $18.50 being the amount the jury found to be the proper annual rental, and the jury having found that the permanent improvements put on the land are $300, and the amount of taxes paid $130, equal $430, the annual rental from September, 1880, at $18.50 will be deducted from the amount of defendant's betterments and taxes ($430), and defendant will have judgment for the residue.

The plaintiff is entitled to judgment for the land, but no writ of ouster should issue until the defendant's judgment for betterments is satisfied. *Albea v. Griffin,* 22 N. C., 9.

We see no error except in the judgment, which will be corrected as stated above, and thus corrected, it will be affirmed.

Modified and Affirmed.

[CLARK, J., did not sit.]