STACY, J., not sitting; WALKER, J., dissenting.
Action to determine the extent of plaintiffs' liability on a certain note and mortgage, executed and delivered to Thomas Thomas, and by him given as security to the county of Carteret. A brief history of this litigation is set out in the judgment of the Superior Court, entered at the June Term, 1921:
"This cause coming on to be heard before J. Lloyd Horton, (375) J., and a jury, and it appearing to the court that at the June Term, 1920, of said court, this cause had been tried before his Honor, Connor, J., and a jury, and at said term the following issues, with their answers, were submitted and found by the jury as follows, to wit:
"1. In what amount, if any, is Thomas Thomas, trustee of the courthouse bond sinking fund, indebted to Carteret County? Answer: `$13,236.49, with interest.'
"2. What sum, if any, is Carteret County entitled to recover of the United States Fidelity Guaranty Company as surety for Thomas Thomas, treasurer of Carteret County? Answer: `Nothing.' *Page 399 
"3. What sum, if any, is Carteret County entitled to recover of W. A. Mace, administrator of Alonzo Thomas, deceased, on the bond of Thomas Thomas, trustee? Answer: `$5,000.'
"4. Were the note and mortgage of T. M. Thomas and wife, Laura, executed to Thomas Thomas and assigned to Carteret County, taken and accepted with the understanding and agreement that the same should be used only after the other securities, held by the county for Thomas Thomas, trustee, had been exhausted, as alleged in the complaint? Answer: `No.'
"5. What sum, if any, is Carteret County entitled to recover of T. M. Thomas and wife on account of the note for $13,500 secured by mortgage assigned to said county by Thomas Thomas? Not answered.
And it further appearing to the court that the presiding judge of said court in his discretion set aside the answer to the fourth issue and failed to answer the fifth issue, which he instructed the jury the court would answer after they had answered the other issues, and permitted the plaintiffs to file a reply and further pleading upon which the following issues were submitted and answered at this, the June Term, 1921, of CARTERET, before his Honor, Horton, J., and a jury, as follows, to wit:
"4. In what amount, if any, is W. A. Mace, administrator, etc., of Alonzo Thomas, indebted to Carteret County on account of the term of said Alonzo Thomas as treasurer of Carteret County, beginning on the first Monday in December, 1914, and ending at the death of said Alonzo Thomas on 18 November, 1915? Answer: `$5,000, and interest.'
"5. What amount, if any, is Carteret County entitled to recover of defendant United States Fidelity Guaranty Company as surety for said Alonzo Thomas as treasurer of Carteret County for said term, beginning on the first Monday in December, 1914? Answer: `$8,236.49, and interest.'
"6. Were the note and mortgage given to Thomas Thomas by plaintiff given as an accommodation paper to (376) said Thomas Thomas, as alleged by plaintiffs? Answer: `Yes.'
"7. Is the defendant, Carteret County, a holder for value as between it and the plaintiffs of the $13,500 note and mortgage made by plaintiffs? Answer: `Yes.'
"8. Were the note and mortgage of plaintiffs executed to Thomas Thomas and assigned to Carteret County taken and accepted with the understanding and agreement that the same should be used by the county only after the bonds of said Thomas Thomas and of said *Page 400 
Alonzo Thomas had been exhausted, as alleged by plaintiffs, and then applied to the balance unpaid due said county on account of the Thomas Thomas trusteeship of the sinking fund and the treasurership of said Alonzo Thomas? Answer: `Yes.'
"9. What sum, if any, is Carteret County entitled to recover of plaintiffs on account of the note for $13,500, secured by mortgage assigned to said county by Thomas Thomas? Answer: `$13,236.49, with interest from 1 October, 1916, to be credited with $5,000 and interest on same from 13 June, 1921, due by the estate of Alonzo Thomas as surety for Thomas Thomas, trustee of the courthouse bond sinking fund,' the last issue having been answered by the court by consent of all parties that the court might answer same after verdict as a matter of law.
"It is now considered and adjudged by the court that the answers to the issues number 4 and 5 be, and are on motion of defendants, other than Carteret County, set aside as a matter of law for the reason that the jury found, at the June Term, 1920, by its answer to the first issue, that Thomas Thomas, trustee of the courthouse bond fund received and misappropriated the funds.
"It is further considered and adjudged by the court that Carteret County recover nothing against United States Fidelity Guaranty Company as surety, and that said defendant United States Fidelity Guaranty Company go without day and recover its costs.
"It is further considered and adjudged by the court that Carteret County recover of W. A. Mace, administrator of the estate of Alonzo Thomas, deceased, the sum of $5,000, with interest from 13 June, 1921, as surety on the bond of Thomas Thomas, trustee of the courthouse bond sinking fund, said Mace, administrator, having tendered judgment for said amount in open court, said amount to be credited on the amount due Carteret County by T. M. Thomas and wife, Laura P. Thomas.
"It is further considered and adjudged by the court that Carteret County recover of T. M. Thomas and wife, Laura Thomas, the sum of $13,236.49, with interest from 1 October, 1916, at the rate of 6 per cent per annum, to be credited with the sum of (377) $5,000, and interest on same from 13 June, 1921, due by Mace, administrator of Alonzo Thomas, deceased, the said Alonzo Thomas having been surety on the bond of Thomas Thomas, trustee of the courthouse bond sinking fund.
"It is further considered and adjudged that the note and mortgage given by T. M. Thomas and wife, Laura P. Thomas, to Thomas Thomas, and assigned by Thomas Thomas to Carteret County, be foreclosed to pay said indebtedness, and that Luther Hamilton and *Page 401 
Leslie Davis be, and are appointed commissioners to sell the lands described in the mortgage of T. M. Thomas and wife, Laura P. Thomas, to Thomas Thomas, recorded in the office of the register of deeds of Carteret County, in Book 22, page 339, after due advertisement and in accordance with the law governing sales of real estate under execution.
"It is ordered that such advertisement shall not be made until sixty days after the adjournment of this court, and then only in the event plaintiffs shall not have fully discharged the liability of this judgment.
"It is further adjudged that defendant Mace, administrator, pay the costs of the action, to be taxed by the clerk.
J. LLOYD HORTON, Judge Presiding."
Upon the second trial the following admission was made in open court, and entered of record:
"Counsel for plaintiffs, having so admitted in open court, the court finds the following facts:
"In this case, the plaintiffs, T. M. Thomas and wife, Laura Thomas, agree that, pursuant to the issues found in the trial of this case before Hon. George W. Connor, judge, at the June Term, 1920, the defendant, Carteret County, is entitled to a judgment against the plaintiffs, T. M. Thomas and wife, Laura Thomas, in the sum of $13,236.49, with interest, said judgment to be credited for such amounts as had been or would be found by the jury in the case that the defendant Mace, administrator, and others are indebted to said Carteret County."
His Honor set aside the verdict on the 4th and 5th issues, as a matter of law, and rendered the judgment appearing above. Plaintiffs and defendant Mace, administrator, appealed.
The case at bar has been tried twice in the Superior Court, and this is the second appeal here. (378) Former opinion reported in 180 N.C. 109. It is doubtful if the allegations of the complaint and the wording of the 8th issue, by correct interpretation, amount to a charge and finding that plaintiff's note and mortgage were not intended to take effect absolutely and unconditionally at the time of their delivery. It was only upon *Page 402 
the allegation of a conditional delivery that plaintiffs were permitted to show the "understanding and agreement" upon which the note and mortgage were "taken and accepted." Indeed, on the facts of the present record — the mortgage having been delivered to the mortgagee and by him in turn assigned to Carteret County — it is not altogether clear or certain that this position was ever open to the plaintiffs. Buchanan v.Clark, 164 N.C. 56; Huddleston v. Hardy, 164 N.C. 210; Bond v. Wilson,129 N.C. 325; note: 16 L.R.A. (N.S.) 941. But as the point is not raised by any specific exception, we shall not pass upon it now. It is unnecessary for us to do so.
The principle applicable to a conditional delivery has been sanctioned and approved by us in a number of carefully considered decisions; and it is now very generally recognized in this and other jurisdictions. Farringtonv. McNeill, 174 N.C. 420; Bowser v. Tarry, 156 N.C. 35; Gaylord v.Gaylord, 150 N.C. 222; Hughes v. Crooker, 148 N.C. 318; Aden v. Doub,146 N.C. 10; Pratt v. Chaffin, 136 N.C. 350; Kelly v. Oliver, 113 N.C. 442, and Ware v. Allen, 128 U.S. 590. It is said in Anson on Contracts (Am. Ed.) 318: "The parties to a written contract may agree that until the happening of a condition, which is not put in writing, the contract is to remain inoperative." And again, in Wilson v. Powers, 131 Mass. 539: "The manual delivery of an instrument may always be proved to have been on a condition which has not been fulfilled, in order to avoid its effect. This is not to show any modification or alteration of the instrument, but that it never became operative and that its obligation never commenced." These excerpts are quoted with approval in Garrison v. Machine Co., 159 N.C. 285, where the same doctrine is announced by Walker, J., in an elaborate review of the authorities on the subject in hand.
We are of the opinion, however, that the admission, made in open court, to the effect that the defendant county was entitled to a judgment on the note and mortgage in question (though subject to certain credits), takes these instruments out of the class of conditionally delivered contracts, if, indeed, they were ever entitled to be styled as such. To admit their present validity and binding force for any purpose, in advance of the happening of the contingent event upon which it is alleged they were to take effect, is at variance with the theory of a conditional delivery, and brings into operation other principles of law.
"It is fully understood that although a written instrument (379) purporting to be a definite contract has been signed and delivered, it may be shown by parol evidence that such delivery was on condition that the same was not to be *Page 403 
operative as a contract until the happening of some contingent event, and this on the idea, not that a written contract could be contradicted or varied by parol, but that until the specified event occurred, the instrument did not become a binding agreement between the parties." Bowserv. Tarry, supra. The question is controlled very largely by the intention of the parties. Waters v. Annuity Co., 144 N.C. 670. But plaintiffs have abandoned this position (if they were ever entitled to take it) by their admission in open court, for it is only upon the strength and validity of the note and mortgage that any judgment at all could be rendered against them and in favor of Carteret County.
A valid delivery and binding contract having once been established, or admitted, the plaintiffs may not thereafter be permitted to annex a condition subsequent, resting in parol, and in direct contradiction to the express terms of their written obligation, for this would infringe upon the well settled rule that oral evidence will not be admitted to vary or contradict the terms of a written instrument. Mfg. Co. v. McCormick,175 N.C. 277, and cases there cited.
This doctrine was well stated by Smith, C. J., in Ray v. Blackwell,94 N.C. 10, as follows: "It is a rule too firmly established in the law of evidence to need a reference to authority in its support, that parol evidence will not be heard to contradict, add to, take from, or in any way vary the terms of a contract put in writing, and all contemporary declarations and understandings are incompetent for such purpose, for the reason that the parties, when they reduced their contract to writing, are presumed to have inserted in it all the provisions by which they intend to be bound," citing 1 Greenleaf Ev., sec. 76; Etheridge v. Palin, 72 N.C. 213. And to like effect are many decisions in our Reports, too numerous to be cited here.
In Walker v. Venters, 148 N.C. 388, it was said: "It is true that a contract may be partly in writing and partly oral (except when forbidden by the statute of frauds), and that in such cases the oral part of the agreement may be shown. But this is subject to the well established rule that a contemporaneous agreement shall not contradict that which is written. The written word abides, and is not to be set aside upon the slippery memory of man." See, also, Moffitt v. Maness, 102 N.C. 457, one of the leading cases on this subject, and Sykes v. Everett, 167 N.C. 600. This last citation contains an interesting and illuminating discussion of a kindred and closely allied subject which supports and is in full accord with our present decision.
Kernodle v. Williams, 153 N.C. 475, and others like it, have no application either to the law or the facts of this (380) *Page 404 
case. That case held: "Where a contract is not required to be in writing it may be partly written and partly oral, and in such cases, when the written contract is put in evidence it is admissible to prove the oral part of it." But the instrument here in question a conveyance of land, to be applied to the payment of the defalcation of public funds by the grantor's nephew, is required to be entirely in writing, and no oral agreement or private understanding can years afterwards be written into the contract in order to relieve the grantor of the responsibility he assumed and upon the execution of which he procured the release of his nephew.
In Gaylord v. Gaylord, 150 N.C. 222, the Court held that "the doctrine of engrafting an oral agreement upon a written instrument which is required by the statute of frauds for the conveyance of land cannot be establishedin favor of the grantor in the deed." That case has been very often cited since with approval. See citations thereto in Annotated Edition.
In Campbell v. Sigmon, 170 N.C. 351, the Court held: "If, notwithstanding the solemn recitals and convenants in a deed, the grantor could show a parol trust in himself it would virtually do away with the statute of frauds, and would be a most prolific source of fraud and litigation. No grantee could rely upon the convenants in his deed," citing, among other cases, Gaylord v. Gaylord, supra.
In Walters v. Walters, 172 N.C. 330, the same matter was fully discussed again, and it was held, "The grantor cannot set up a parol trust in his own favor against the grantee, saying the ruling in Gaylord v.Gaylord, 150 N.C. 222, that a parol trust cannot be set up by the grantor as to the conveyance in fee to his grantee, is not only upheld by the reasoning and authorities therein cited, but that case has since been upheld and reaffirmed in Ricks v. Wilson, 154 N.C. 289; Jones v. Jones,164 N.C. 322; Cavenaugh v. Jarman, ib., 375; Trust Co. v. Sterchie,169 N.C. 22; Campbell v. Sigmon, 170 N.C. 351, and Walters v. Walters (when here before), 171 N.C. 313." In very recent cases, Allen v. Gooding,173 N.C. 96, and Chilton v. Smith, 180 N.C. 472, Gaylord v. Gaylord has been again cited with approval. In the latter case the Court overruled a previous decision of this Court, Fuller v. Jenkins, 130 N.C. 554, which had mistakenly held that a deed absolute on its face could be converted into a mortgage because of an oral agreement between the parties at the time that it should operate as a mortgage, and said that it "stands alone and is expressly overruled."
If a negro or some poor white man is convicted of stealing a side of meat for his starving family the doors of the State's Prison usually lie open before him, but Thomas Thomas, having *Page 405 
been convicted of appropriating thousands of dollars entrusted (381) to his care for safe keeping, and sentenced to the State Penitentiary, it was made to appear to the Governor of the State, who has the unrestricted power of pardon, that it was more advisable to secure the return of this money to the taxpayers of Carteret County than that the criminal should be punished, and upon assurance that by this instrument his uncle had insured the payment of this fund to the taxpayers the pardon was granted. That this reason was given out to the world as the ground for the pardon. There is no provision in that deed that the grantor therein, who on the faith thereof procured the release of his nephew from the sentence of the law, should be "exempted from payment if some one else could be sued to recover the sum embezzled." There could be no oral agreement in favor of the grantor that notwithstanding, in fact, the public must collect the money, if they could, out of other people. On the written agreement that out of the land conveyed the county treasurer would be reimbursed, the pardon was given and the convict released. The State performed its part of the contract. The written agreement on the other hand was unequivocal that the property conveyed in the deed should be applied to reimburse the county and protect the people of the county from raising additional taxes to make good the loss their treasury had sustained by the defalcation. Upon the facts in the present record the mortgage was delivered to the mortgagee, and by him assigned to Carteret County in consideration of his pardon, and the conveyance was as unconditional as the pardon which he received.
The admission having been made in open court in this case, to the effect that the defendant county was entitled to a judgment on the note and mortgage in question, takes this instrument out of the class of conditional and conditionally delivered contracts, if indeed it had ever been entitled to be so styled. There was no reservation in the conveyance now sought to be set aside that it was "not to be valid if any one else could be sued for the money." It will not be charged by any one that the Governor in granting the pardon ever understood that this was a part of the instrument executed by the plaintiff. It was absolutely represented to him as an unconditional security to the county that the funds would be replaced by sale of the property conveyed, and in open court in this case it was admitted that the county was entitled to judgment on the note and mortgage.
Instead of that, these funds which were taken out of the public treasury eight to ten years ago are still withheld, and we are asked by the mortgagor to hold that there must be a long, weary chase *Page 406 
taking the time of the courts at great additional expense (382) to the county to ascertain whether or not there was some private unwritten agreement with some one by which other people should first be sued to recover the money which the plaintiff contracted to pay, if his nephew were released.
The pardon was unconditional, based upon the security of this conveyance for the unconditional payment of the money. The property of the citizens of Carteret County may be advertised for the payment of the enhanced taxes caused by the defalcation, but the property pledged for the repayment of that sum is still unsold, and the only visible result so far has been the added cost of the courts in investigating the plea of an oral understanding that the property of the mortgagor is to be exempted from liability, if some one else can be found who can be sued. The public burdens are increased by protracted litigation in the metaphysical round of legal technicalities in the effort by learned counsel to
 "Distinguish and divide a hair between south and southwest side,"
with the ultimate result possible that if any one ever pays anything there will be little, if any, of it that will get into the treasury for the benefit of the people who have lost it.
Applying these principles, his Honor might well have excluded all the evidence offered on the second trial and rendered judgment on the verdict as returned and left undisturbed at the June Term, 1920. But as the same result has been accomplished, though somewhat irregularly, by the judgment as entered, we have concluded to let it stand, as it is a matter of public interest to all the people of Carteret County that this litigation should be disposed of as speedily as possible. It is their money which has been misused and misappropriated, and embezzled; and, up to the present time, nothing has been refunded or paid back. The note and mortgage in question were given to make good this shortage and to save the county harmless from defalcations of one of its officers. These transactions occurred in the year 1916. The plaintiffs' obligation matured on 7 February, 1917. Nothing further seems to have been done until this suit was instituted on 3 February, 1919, to require the commissioners to proceed with the collection of the prior securities in exoneration of plaintiffs' undertaking. Plaintiffs also allege that the county authorities have been negligent in this respect, and they have sought to be relieved from any further liability by reason of such delay and inaction. It would seem that this surreptitiously *Page 407 
taken money, to say the least, should have been made good long ago. Public funds belong in the public treasury, and we are unable to find any warrant of law for such indulgences as are disclosed by the present record.
This opinion will be certified to the Superior Court of Carteret County, to the end that the judgment entered at the June Term, 1921, may be modified so as to provide for a report and confirmation of the sale as required by statute; and, as (383) thus amended and changed, the judgment will be
Modified and affirmed.
STACY, J., not sitting.