R. L. STROWD v. J. R. WHITFIELD AND HIS WIFE, ADA WHITFIELD.

(Filed 18 May, 1932.)

1. **Principal and Agent A b—Contract in this case held an option and did not create relationship of principal and agent.**

   A contract between an owner of land and a real estate company whereby the former agrees to sell certain land to the latter upon the payment of a certain sum within a specified time, with a further agreement that the real estate company might sell the land at public or private sale within the time specified upon the expenditure of a certain sum for improvements, and that the owner should receive a specified per cent realized from the sale over and above the sum named. is *Held* an option on the land binding upon the owner upon receipt of the purchase price, and did not create an agency for the sale of the land.

2. **Principal and Agent C b—Agent for sale of real estate does not have the power to rescind sale or cancel notes therefor.**

   Where, under an agreement with the owner, an agent has subdivided and sold certain land at public auction on certain terms of payment, and a purchaser at the sale has given notes secured by a mortgage payable to the owner, the agent has no authority to agree to rescind the sale and cancel the notes upon a conveyance of the property to the agent unless the owner consents to or ratifies the transaction, and when this has been done without the owner's knowledge he may successfully maintain an action on the notes against the purchaser at the sale to recover the deficiency after foreclosure of the mortgage according to its terms and the application of the proceeds of the sale to the notes.

STACY, C. J., dissenting.

CLARKSON, J., concurs in the dissent.

APPEAL by defendants from *Daniels, J.*, at October Term, 1931, of ORANGE. Affirmed.

This is an action to recover the amount due on certain notes executed by the defendants, and payable to the plaintiff. The consideration for said notes was part of the purchase price for certain lots sold and conveyed to defendants by plaintiff. The notes were secured by a deed of trust executed by the defendants. Upon default in the payment of the notes, the lots conveyed by the deed of trust were sold by the trustee, and conveyed to the purchaser, in accordance with the power of sale contained in the deed of trust. The amount received by the trustee for said lots, less the costs and expenses of the sale, was applied as a payment on the notes, leaving a balance now due thereon of $1,126.53, with interest from 12 October, 1930. The plaintiff demands judgment that he recover of the defendants the said amount.

As their defense to plaintiff's recovery in this action, the defendants allege in their answer that pursuant to an agreement entered into at the time the notes sued on in this action were executed, by and between the defendants and the agent of the plaintiff by whom the lots were sold to the defendants, and after the execution of said notes, the contract between the plaintiff and the defendants for the sale of the lots was rescinded, and that the agent of the plaintiff, acting for him and in his behalf, agreed to cancel and surrender said notes to the defendants. The defendants prayed judgment that the notes now be canceled and surrendered, and that plaintiff recover nothing of the defendants in this action.

The allegations in the answer with respect to the agreement for the cancellation of the notes sued on, and the rescission of the contract for the sale of the lots, were denied by the plaintiff in his reply to the answer.

The action was referred to a referee for trial. The referee heard evidence offered by both plaintiff and defendants. Upon his findings of fact and conclusions of law, the referee recommended that judgment be entered in the action (1) that the notes sued on be canceled and surrendered by the plaintiff to the defendants, and (2) that plaintiff recover nothing of the defendants in this action. Both plaintiff and defendants filed exceptions to the report of the referee.

The report of the referee was heard on the exceptions filed thereto by the judge presiding at the October Term, 1931, of the Superior Court of Orange County, who affirmed the findings of fact made by the referee, and from the evidence found certain additional facts. Upon these facts, the judge reversed certain conclusions of law made by the referee, and

ordered and adjudged that plaintiff recover of the defendants the sum of $1,126.53, with interest thereon from 12 March, 1930, and the costs of the action.

The defendants appealed from the judgment to the Supreme Court.

*R. T. Giles and J. A. Giles for plaintiff.*
*S. M. Gattis, Jr., for defendants.*

CONNOR, J. The facts found by the referee, and affirmed by the judge, at the hearing of the exceptions to the report of the referee, are as follows:

"1. That on 22 April, 1925, and for some time prior thereto, the plaintiff was the owner in fee simple of a tract of land situated in Orange County, North Carolina, known as the "Strowd Place," a short distance from Chapel Hill. This property is traversed by Chapel Hill Boulevard, more generally known as North Carolina Highway No. 75.

2. That some time prior to 22 April, 1925, plaintiff entered into a written contract with the Chapel Hill Insurance and Realty Company, under the terms of which the Chapel Hill Insurance and Realty Company had said property surveyed and platted, a copy of said plat was introduced in evidence at the trial. This property was widely advertised for sale at public auction on 22 April, 1925, and the plaintiff knew about same and during the time said property was being cleared up, preparatory to sale, he went on the property and advised with the men at work, and instructed them what to leave undisturbed in the clearing process and in general exercised the right of ownership over said property.

3. That the property was duly offered for sale on 22 April, 1925, and that the Chapel Hill Insurance and Realty Company and Durham Auction Company were in charge of the sale. Before the bidding commenced the auctioneer announced that this would be a first-class development—that lights, water, streets and sewers would be installed, but these things have never been installed, and no improvements have been made on this property except such as have been made by the individual owners. The plaintiff attended the sale and at one time stopped the sale until certain matters were discussed between him and the selling agents.

4. That at said auction sale the defendants became the last and highest bidders for lots Nos. 16 to 23, inclusive, and executed a memorandum of sale, offered in evidence, which was to the effect that defendants had purchased the said lots from the plaintiff through Chapel Hill Insurance and Realty Company and Durham Auction Company, on the terms set out therein. The next day after the sale, the defendant,

J. R. Whitfield, went to the office of the Chapel Hill Insurance and Realty Company and talked with Mr. W. S. Roberson, president and general manager of the company, and advised Mr. Roberson that defendants did not want the lots as they were not of uniform width and were not as they were represented to be. Mr. Roberson stated to the defendant that he did not want the purchaser to become dissatisfied, and if defendants would take the property and execute the deed of trust and notes to secure the payment of the unpaid balance, the defendants would be given more land or their money back if they later became dissatisfied with the transaction. Relying upon this agreement, the defendants did execute the deed of trust and notes. The notes were payable to R. L. Strowd, and the deed of trust was executed to the Bank of Chapel Hill, trustee for R. L. Strowd. Said notes and deed of trust bear date of 22 April, 1925, but were actually executed after the conversation between defendant, J. R. Whitfield and Mr. Roberson. The deed of trust was introduced in evidence.

5. That the defendants later did become dissatisfied with their purchase and notified Mr. Roberson to that effect. Whereupon, Mr. Roberson had defendants to execute to Chapel Hill Insurance and Realty Company a deed for the property, and returned to defendants the cash payment which had been made by defendants, and promised that he would return to them the notes and deed of trust, which were executed when the lots were purchased.

6. That the notes and deed of trust which defendants executed were never canceled and returned to them, and nothing was ever paid on said notes. The trustee in the deed of trust duly advertised and offered for sale the property conveyed thereby, and sold the same on 1 March, 1930. The plaintiff, R. L. Strowd, became the last and highest bidder at said sale, in the sum of $200, and received a deed from the trustee for said property. From this sale there was a balance, after the payment of the cost and expenses of the same, of $185.47, which has been applied as a credit on the notes, leaving an unpaid balance due thereon of $1,126.53, with interest from 12 March, 1930."

In addition to the foregoing facts found by the referee, and approved by the judge, the judge found from the evidence the following facts:

"7. That during the auction sale an agreement was made between plaintiff and Chapel Hill Insurance and Realty Company whereby plaintiff agreed to accept from Chapel Hill Insurance and Realty Company the notes of purchasers as a part of the purchase price, and the said corporation guaranteed the payment of said notes.

8. That plaintiff had no actual notice of the agreement between Chapel Hill Insurance and Realty Company and defendants to rescind

the sale of the lots to defendants, that he was not present at the time of the execution and delivery of the notes, and that he had no notice of the subsequent conveyance of· the lots by the defendants to the Chapel Hill Insurance and Realty Company.

9. That the notes sued on in this action, were delivered by Chapel Hill Insurance and Realty Company to plaintiff before their maturity."

The judge reversed certain conclusions of law made by the referee on the facts found by him, particularly the conclusion of law that the Chapel Hill Insurance and Realty Company was acting as agent of the plaintiffs in the sale of the lots to the defendants, and that the contract in writing between the plaintiff and the Chapel Hill Insurance and Realty Company was not an option, but a contract by the terms of which the Chapel Hill Insurance and Realty Company was the agent of the plaintiff, and as such agent was authorized to sell the lots owned by plaintiff. In this the defendants contend, on their appeal to this Court, that there was error. This contention cannot be sustained. The judgment is affirmed for two reasons:

1. The contract between plaintiff and the Chapel Hill Insurance and Realty Company, dated 3 March, 1925, appearing in the record, is an option, by which the plaintiff agreed to sell and convey the "Strowd Place," to the Chapel Hill Insurance and Realty Company, upon the payment to the plaintiff by said Company of the sum of $125,000, at any time within 45 days from the date of said contract. Plaintiff agreed further that at any time during the existence of the option, the Chapel Hill Insurance and Realty Company, might at its own cost and expense, endeavor to sell the said property at public or private sale, provided the said company should expend at least the sum of $1,000, in endeavoring to sell the said property. In consideration of this latter feature of the contract, it was agreed that "R. L. Strowd is to participate to the extent of twenty-five per cent in whatever excess the property sells for during the said period in excess of $125,000, plus the cost of development and sale, not ·to exceed $12,500." This contract cannot be construed as establishing the relation of principal and agent between the parties with respect to the land described therein. It is clearly an option unilateral in its obligation, and not binding on the Chapel Hill Insurance and Realty Company, until accepted by said company.

2. Conceding, however, that under the terms of the contract, or upon the facts found by the referee and approved by the judge, the Chapel Hill Insurance and Realty Company, was the agent, real or apparent, of the plaintiff, with authority to sell the lots purchased by the defendants, it does not follow that the agent, after the sale had been made and reported to his principal, was authorized to rescind the sale and to

take the title to the lots in itself from the defendants without notice to the plaintiff, who was then the holder of the notes. The authority of an agent to sell the property of his principal does not include the power, after the sale has been made, and reported to and confirmed by the principal, to rescind the sale, and cause the property to be conveyed to him by the purchaser. In the instant case, all the evidence shows that the defendants dealt with the Chapel Hill Insurance and Real Estate Company, both in the purchase of the lots, and in the rescission of the sale, as the owner of the lots, and not as the agent of the plaintiff. It is true that the lots were conveyed to defendants directly by the plaintiff, and the notes executed by defendants for the balance due on the purchase price were payable to the plaintiff. This was in accordance with the contract between the plaintiff and the Chapel Hill Insurance and Real Estate Company. However, when defendants demanded that the sale of the lots be rescinded, in accordance with their agreement with the Chapel Hill Insurance and Real Estate Company, at or before the delivery of the deed and notes, defendants, at the request of the Chapel Hill Insurance and Real Estate Company, conveyed the lots to the said company and not to the plaintiff. They made no demand on the plaintiff to rescind the sale, and not until after the foreclosure of the deed of trust, and the commencement of this action, did the defendants contend that the agreement to rescind the sale of the lots, at any time they became dissatisfied therewith, was made by the Chapel Hill Insurance and Real Estate Company as agent of the plaintiff. We find no error in this appeal. For this reason the judgment is

Affirmed.

STACY, C. J., dissenting: Civil action to recover deficiency judgment on notes given by highest bidder for lots at auction sale. The following memorandum was executed at the time of sale:

"This is to certify, that I have this day bought from R. L. Strowd through Chapel Hill Insurance and Realty Company and Durham Auction Company, lots Nos. 16 to 23, inc., Block No. 18, of the R. L. Strowd farm, on the eastern corporate limits of Chapel Hill, N. C., as shown on plat of said property made by Sidney Credle, surveyor, April, 1925, and also by Blair and Drane, engineers, 1 November, 1921, for which ........ agree to pay the sum of $205, one-tenth in cash, and the balance to be paid in nine equal annual installments, with interest on deferred payments at 6 per cent per annum, payable semi-annually, notes given for deferred payments to be secured by first mortgage on the lands purchased.

Witness my hand and seal, this 22 April, 1925.

Witness: J. L. F.                          J. R. Whitfield.   (Seal.)"

24—202

The next day, in the office of the Chapel Hill Insurance and Realty Company, where, it had been announced, deeds would be delivered to the purchasers, J. R. Whitfield interposed an objection on the ground that the lots bid off by him were smaller in size than shown on map and were not as represented at sale; whereupon the manager of the Chapel Hill Insurance and Realty Company, who had the matter in charge, advised the said Whitfield to go ahead, make the cash payment, execute purchase-money notes and mortgage, or deed of trust, for balance, and if his contention turned out to be correct, or if he were not satisfied with the lots, they would be taken back. "I told him to go ahead and take the lots and that he and I would adjust the matter later. He says that I agreed to give him more land or money and I suppose I did agree to take the land back if he was not satisfied." Was not this, then, a conditional delivery of said notes and deed of trust? *Watson v. Spurrier,* 190 N. C., 726, 130 S. E., 624; *Overall Co. v. Hollister,* 186 N. C., 208, 119 S. E., 1; *Building Co. v. Sanders,* 185 N. C., 328, 117 S. E., 3; *White v. Fisheries Co.,* 183 N. C., 228, 111 S. E., 182; *Thomas v. Carteret,* 182 N. C., 374, 109 S. E., 384. If so, the plaintiff was fixed with notice of such delivery. The case should go back for a finding on this point.

The manager of the Chapel Hill Insurance and Realty Company, upon notice of dissatisfaction, returned the cash payment in accordance with the condition of sale, and took deed for the lots, but plaintiff insists upon a deficiency judgment after getting his lots back by foreclosure. A right costly experience for the defendants.

CLARKSON, J., concurs in dissent.